[No. G041225. Fourth Dist., Div. Three. May 27, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
RENO PHILLIP SIFUENTES et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part IIB., C., and D.

COUNSEL

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant and Appellant Reno Phillip Sifuentes.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant Juan Lopez.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Jeffrey J. Koch and Gary W. Brozio, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**ARONSON, Acting P. J.**—A jury found defendants Juan Lopez and Reno Phillip Sifuentes guilty of possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)(1); all statutory citations are to the Penal Code unless specified) with a gang enhancement (§ 186.22, subd. (b)(1)). The jury also convicted both defendants of active gang participation (§ 186.22, subd. (a)) and convicted Sifuentes of methamphetamine possession (Health & Saf. Code, § 11377). Sifuentes admitted suffering several prior convictions.

Sifuentes contends the doctrine of constructive possession cannot be stretched to support the firearm conviction against him, and both defendants challenge the sufficiency of the evidence to support the gang enhancement on the firearm possession charge and their conviction for active gang participation. They also complain the trial court admitted improper opinion testimony from the gang expert. In the published portion of this opinion, we agree the evidence does not support the conclusion Sifuentes had the right to control the firearm discovered near Lopez. Accordingly, Sifuentes's gang enhancement and active gang participation conviction cannot stand because both were based on the firearm possession charge.

We conclude in the unpublished portion of the opinion that substantial evidence supports the gang enhancement for Lopez's possession of the firearm and his active gang participation conviction. We also reject Sifuentes's assertion his trial attorney rendered ineffective assistance of counsel by failing to seek suppression of evidence and severance from Lopez's case. We agree, however, Sifuentes's admissions to prior conviction allegations were invalid because he was not advised of his constitutional rights. We therefore reverse the judgment in part and affirm in all other respects.

I

### Factual and Procedural Background

On the morning of May 11, 2007, Costa Mesa police officers checked the registry of a motel near Santa Ana known for drug and prostitution activities. They learned Sifuentes, a convicted felon with an outstanding "no-bail" parole arrest warrant, had rented room 215.

The motel clerk gave the officers a master room key. The officers knocked on room 215's door, identified themselves, stated they had a warrant, and demanded entry. Receiving no response after two attempts, and seeing the window blinds move and hearing movement inside, the officers entered the

room. Sifuentes lay on top of the bed nearest the door. He attempted to rise, but one of the officers pushed him down on the bed and ordered him to stay down.

Lopez, also a convicted felon, knelt on the floor on the far side of the second bed, facing the officers. There were two women in the room. One lay naked under the sheets of the bed closest to Lopez. The other stood near the bathroom, wrapped in a towel.

An officer ordered Lopez to raise his hands. Lopez raised only his left hand and looked down at his right, with his arm bent at the elbow. After three demands to raise his right hand, he complied. An officer later found a loaded .40-caliber semiautomatic handgun under the mattress next to Lopez. Investigators did not test the gun for fingerprints or DNA. Officers also found methamphetamine and a pipe in Sifuentes's pocket.

Santa Ana Police Detective Matthew McLeod testified as a gang expert. Based on arrest reports and other police contacts, field interviews, STEP (California Street Terrorism Enforcement and Prevention) Act (§ 186.20 et seq.) notices,[1] and defendants' past association with other gang members, McLeod concluded Sifuentes and Lopez were active participants in Santa Ana's Delhi criminal street gang on the day of their arrest.

McLeod based his opinion on several prior incidents. In 1997, Sifuentes gave a woman a loaded gun and ammunition to hide in her purse when police stopped them in territory claimed by the Delhi gang.[2] In 2000, police officers arrested Sifuentes and other members of his group, which included several members of the United Assassin Krew gang (UAK) and another Delhi gang member. Police learned that a member of the group possessed a weapon. McLeod explained UAK allied itself with Delhi and members from UAK often became Delhi gang members. Investigators searched Sifuentes's bedroom on this occasion and found UAK paraphernalia. This incident prompted Santa Ana police officers to issue a STEP notice to Sifuentes.

In 2001, police officers recovered weapons at Sifuentes's home. They also found several pictures of Delhi gang members and other paperwork showing Sifuentes's connection to the gang. Sifuentes's half brother admitted both he and Sifuentes associated with Delhi. Sifuentes also made statements acknowledging he associated with the gang and that a rival gang killed his brother.

---

[1] A STEP notice informs suspected individuals that law enforcement believes they associate with a criminal street gang.

[2] The prosecution offered information about defendants' history of possessing weapons as foundation for the gang expert's opinions, not to prove defendants possessed a weapon on the current occasion. (See *In re Scott* (2003) 29 Cal.4th 783, 823 [129 Cal.Rptr.2d 605, 61 P.3d 402] (*Scott*) [expert witness may base opinion on reliable hearsay].)

In the current case, Sifuentes admitted to investigators he had associated with the Delhi gang in the past, but claimed to have "moved on." McLeod explained Sifuentes had no recent contact with police officers because he was incarcerated "for a significant length of time." McLeod also described Sifuentes's numerous tattoos, some of which indicated gang membership.

McLeod also provided information linking Lopez to the Delhi gang. Lopez resided in territory the Delhi gang claimed and had tattoos indicative of gang affiliation. In July 1994, he was arrested in a stolen car with two Delhi gang members. In 1998, police officers arrested Lopez's companion for a weapons violation, and during the investigation, Lopez admitted he associated with the Delhi gang. In 2006, Lopez and another gang member fled from Santa Ana police, and later Lopez was found to be in possession of a blue bandanna, a color associated with Delhi. When contacted on that occasion, Lopez admitted associating with the Delhi gang and the police issued a STEP notice advising Lopez that Delhi was a criminal street gang. Finally, McLeod spoke with Lopez on May 14, 2007, three days after his arrest in the motel room. Lopez admitted his long-standing association with Delhi. They discussed his nicknames or gang monikers and other topics related to the gang. Lopez claimed, however, he had stopped associating with the gang for over a year.

According to McLeod, the Delhi gang numbered about 100 strong, and its primary activities included assaults with firearms, including murder, and juvenile weapons possession. McLeod testified about aspects of the gang subculture, such as the importance of respect within the gang. Because committing crimes enhances a gang member's prestige within the gang, gang members tend to discuss their crimes with their cohorts to gain respect and notoriety.

McLeod also testified that weapons, particularly guns, play a prominent role in the gang subculture. McLeod defined a "gang gun" as a gun that is passed freely among gang members to use in their criminal endeavors. He explained that aside from "certain restrictions," a gang gun is "accessible" to all gang members "[a]t most times." Gang members "frequently and almost are required to share information about the possession of gang guns and where they're kept." A gang member possessing a gun will inform other gang members he has a firearm for two reasons: (1) possession of a gun garners respect within the gang for the possessor, and (2) to alert other gang members who are subject to probation or parole terms that prohibit them from knowingly associating with anyone carrying a gun. Gangs permit their members who are on probation or parole to withdraw from planned activities because gangs are aware of the penal consequences for probationers and parolees who associate with others possessing a firearm. Younger gang members with less to lose will claim ownership of weapons to protect older gang members.

McLeod opined a gang's possession of guns promoted, furthered, or assisted its felonious criminal conduct because possession facilitated its criminal endeavors and enhanced the gang's reputation by "spreading word of mouth . . . that members of this gang are associated or known to possess weaponry and [are] to be feared." McLeod believed a gang member's mere possession of a gun "at the ready" benefits the gang. He admitted, however, he had no information that Lopez kept a gun for his gang, and that no direct evidence tied Lopez's gun to other gang members or showed that it had been used by the gang.

According to McLeod, a motel room, or "momo" in gang parlance, is often used as a meeting place for gang members. The motel where officers found Sifuentes and Lopez, however, was not located in territory the Delhi gang claimed.

Following a trial in July 2008, a jury convicted defendants of the crimes and enhancements listed above. Sifuentes admitted he had suffered a 1992 robbery conviction, triggering the "Three Strikes" law (§§ 667, subds. (d) & (e)(1), 1170.12, subds. (b) & (c)(1)) and qualifying as a serious felony within the meaning of section 667, subdivision (a)(1). He also admitted serving separate prison terms for a 1998 second degree burglary conviction and a 2001 conviction for possession of a firearm by a felon. (§ 667, subd. (b).) In October 2008, the trial court sentenced Sifuentes to 12 years in prison; Lopez received five years.

## II

### DISCUSSION

A. *No Substantial Evidence Supports Sifuentes's Firearm Possession Conviction*

Sifuentes challenges the sufficiency of the evidence to support his conviction for being a felon in possession of a firearm. Our review of this issue is limited to determining whether substantial evidence supports the verdict. Substantial evidence is defined as evidence that is reasonable, credible, and of solid value. (*People v. Elliott* (2005) 37 Cal.4th 453, 466 [35 Cal.Rptr.3d 759, 122 P.3d 968].) A reviewing court must accept logical inferences the jury might have drawn from the circumstantial evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396 [133 Cal.Rptr.2d 561, 68 P.3d 1].) " 'A reasonable inference, however, "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere

speculation as to probabilities without evidence." ' [Citations.]" (*People v. Cluff* (2001) 87 Cal.App.4th 991, 1002 [105 Cal.Rptr.2d 80].)

██ The prosecution obtained Sifuentes's conviction for felon in possession of a gun (§ 12021; count 2) based on the doctrine of constructive possession.[3] To establish constructive possession, the prosecution must prove a defendant knowingly exercised a right to control the prohibited item, either directly or through another person. (*People v. Pena* (1999) 74 Cal.App.4th 1078, 1083–1084 [88 Cal.Rptr.2d 656]; *People v. Mejia* (1999) 72 Cal.App.4th 1269, 1272 [85 Cal.Rptr.2d 690] [defendant need not physically have the weapon on his person; constructive possession established where a person knowingly exercised dominion and control over an item].) Possession may be shared with others. (*People v. Neese* (1969) 272 Cal.App.2d 235, 245 [77 Cal.Rptr. 314].) But mere proximity to the weapon, standing alone, is not sufficient evidence of possession. (*People v. Land* (1994) 30 Cal.App.4th 220, 223–224 [35 Cal.Rptr.2d 544].)

Sifuentes contends the prosecution failed to produce substantial evidence he either knew about the gun found under the mattress or that Sifuentes had the right to control it. We agree no substantial evidence shows Sifuentes had the right to control the firearm, even if Sifuentes knew a weapon was in the room.

The prosecution's gang expert did not testify *any* gun possessed by a gang member automatically constitutes a gang gun to be shared with all other gang members. Rather, the gang expert explained gangs use gang guns offensively and defensively to commit crimes and assault their rivals. Under those circumstances, firearms are freely shared and therefore gang members will know who among them has possession of these weapons. There was no evidence, however, the gun officers discovered had ever been used in this manner.

██ Even assuming the firearm Lopez possessed fell into the gang gun category, no evidence showed Sifuentes had the right to control the weapon. The gang expert did not testify all gang members always have the right to control a gang gun, whether kept in a safe place or held by another gang member. Rather, the expert testified a gang gun was "accessible" to gang members "at most times," but did not elaborate. When asked if "every single [gang] member" could use the gang gun, the expert responded "certain

---

[3] The prosecution also must prove a defendant had the general intent to possess the firearm. (*People v. Spirlin* (2000) 81 Cal.App.4th 119, 130 [97 Cal.Rptr.2d 1] [possession of a firearm is a general intent crime; "[p]ossession may be either actual or constructive as long as it is intentional"].)

restrictions" applied, but failed to describe the nature of those restrictions.[4] Based on the expert's testimony, it also may be that gang members have no right to control a firearm held by a compatriot where no offensive or defensive actions are undertaken. That was the case here, where Sifuentes and Lopez simply occupied a motel room with two females. There was no evidence defendants had used or were about to use the gun offensively or defensively. Consequently, there is no basis to conclude Sifuentes had the right to control the weapon.

The Attorney General argues the jury could have relied on information that in 1997 Sifuentes gave his female companion a firearm to hide in her purse, and she later told an investigator that Sifuentes always carried a weapon. McLeod testified about this incident based on a 1997 police report, which reported the female companion's statement and that Sifuentes had been arrested on a weapons violation while associating with another Delhi gang member. Although the trial court overruled Sifuentes's hearsay objection, the court did not admit the female companion's statement for its truth, but as part of the basis for the expert's opinion Sifuentes was an active participant in the Delhi gang. (See *Scott, supra,* 29 Cal.4th at p. 823 [expert witness may base an opinion on reliable hearsay].)[5] We therefore may not consider the hearsay statements of Sifuentes's female companion in assessing whether Sifuentes constructively possessed the firearm Lopez attempted to hide.

The Attorney General also claims the expert testified the gun was "jointly possessed," but no evidence supports this assertion. The prosecutor attempted to ask the gang expert in a hypothetical question whether "male number one," a veiled reference in the hypothetical to Sifuentes, "would be aware of the presence of the gun in that motel room?" The trial court, however, sustained objections to this question. The prosecutor responded by narrowing the focus of his inquiry "to whether the offense of possession of a firearm by a felon was committed for the benefit of, at the direction of, or in association with a criminal street gang?" This exchange dealt solely with the "benefit" element of the gang enhancement. The expert answered that "possession of the firearm was, in fact, committed for . . . the benefit of and in association with

[4] Conceivably, some restrictions may stem from a member's status within the gang. For instance, one may question whether a newly admitted 14-year-old gang member could demand the right to use a gang gun held by a 30-year-old veteran.

[5] In overruling Sifuentes's hearsay objection, the trial court implicitly found the hearsay statement of Sifuentes's companion was reliable, even though she had a strong motive to negate her own criminal culpability by blaming Sifuentes for her illegal possession of a firearm. (See *People v. Pollock* (2004) 32 Cal.4th 1153, 1172 [13 Cal.Rptr.3d 34, 89 P.3d 353] [trial court properly excluded from expert's testimony the self-serving hearsay statements of the defendant]; *People v. Coble* (1976) 65 Cal.App.3d 187, 191–192 [135 Cal.Rptr. 199] [possible coconspirator's pretrial statement to police minimizing his role in the crime and blaming the defendant is unreliable as a declaration against interest], disapproved on another ground in *People v. Fuentes* (1998) 61 Cal.App.4th 956, 967 [72 Cal.Rptr.2d 237].)

that criminal street gang." The prosecutor did not elicit, and the expert did not testify that a hypothetical individual in Sifuentes's position would have the right to control the firearm discovered under the mattress.

The prosecutor failed to elicit from the expert any substantial evidence Sifuentes had the right to control the firearm. The expert did not testify all gang members had the right to control communal gang guns, assuming this firearm fell into that category. Rather, as discussed above, he testified certain restrictions applied concerning "access" to a gang gun and did not explain these restrictions or whether he equated access with a right to control.[6] Nor did the expert link Sifuentes to the particular firearm found next to Lopez.

■ Thus, the evidence falls far short of providing substantial evidence Sifuentes had the right to control the firearm in this case. " '[T]he law does not accord to the expert's opinion the same degree of credence or integrity as it does the data underlying the opinion. Like a house built on sand, the expert's opinion is no better than the facts on which it is based.' " (*People v. Gardeley* (1996) 14 Cal.4th 605, 618 [59 Cal.Rptr.2d 356, 927 P.2d 713].) The possibility Sifuentes might have had the right to exercise control over the gun does not by itself provide a basis to infer he had the right to control it. (See *People v. Moore* (2011) 51 Cal.4th 386, 406 [121 Cal.Rptr.3d 280, 247 P.3d 515] ["That an event *could* have happened, however, does not by itself support a deduction or inference it did happen." (original italics)].) Even assuming the expert implied Sifuentes could exercise control over the firearm, no evidentiary basis existed to support this conclusion. Consequently, implying a right of control in the expert's opinion would do "nothing more than inform the jury how [the expert] believed the case should be decided." (*People v. Killebrew* (2002) 103 Cal.App.4th 644, 658 [126 Cal.Rptr.2d 876].)

■ In sum, no substantial evidence supports Sifuentes's conviction for possession of a firearm by a felon (count 2). Because the gang enhancement under section 186.22, subdivision (b), attached solely to the gun possession charge, we must reverse the jury's finding Sifuentes possessed a firearm for the benefit of a criminal street gang. And we must also reverse Sifuentes's conviction for active gang participation, which requires proof, among other elements, that the person " ' "willfully promot[ed], further[ed] or assist[ed] in any felonious criminal conduct by members of that gang." [Citation.]' " (*People v. Lamas* (2007) 42 Cal.4th 516, 523 [67 Cal.Rptr.3d 179, 169 P.3d

---

[6] Nothing in the expert's testimony demonstrated the right to control necessary to establish constructive possession. Access to an item, but with unspecified restrictions, is not the same as having the right to control it. For example, an employee may have access to a coworker's desk, but it does not logically follow that the employee gains the right to exercise control over the items on the desk, such as keys or a wallet.

102].) To prove this element, the prosecutor relied on Sifuentes's alleged firearm possession. Consequently, reversal of Sifuentes's gun possession conviction also requires reversal of Sifuentes's active gang participation conviction.

**B.–D.** *

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### E. *Sifuentes's Admissions to Prior Conviction Allegations Not Intelligent or Voluntary*

As noted above, the information alleged Sifuentes suffered a 1992 robbery conviction triggering the Three Strikes law and qualifying as a serious felony. It also alleged two section 667.5, subdivision (b), priors. Before trial, the court granted counsel's motion to bifurcate the trial on the priors from the remaining charges. Counsel stated his client intended to admit the allegations. The trial court did not obtain defendant's waiver of a jury trial at this point, however.

After the jury returned its verdict and the court discharged the jurors, the court solicited Sifuentes's admissions to the prior conviction allegations.[8] The court did not advise Sifuentes of his constitutional rights, nor obtain an express waiver of rights.

■ Before a trial court may accept a defendant's admission of prior felony convictions, the court must advise the accused of the right against compulsory self-incrimination, the right to confrontation, and the right to a jury trial. (*People v. Mosby* (2004) 33 Cal.4th 353, 359–360 [15 Cal.Rptr.3d 262, 92 P.3d 841] (*Mosby*); accord, *Boykin v. Alabama* (1969) 395 U.S. 238, 243 [23 L.Ed.2d 27, 89 S.Ct. 17094]; *In re Tahl* (1969) 1 Cal.3d 122, 132 [81 Cal.Rptr. 577, 460 P.2d 449]; *In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 561].) The trial court also must advise the accused of the penal consequences of admitting a prior conviction. "[A]n accused, prior to the time the court accepts his admission of an allegation of a prior criminal conviction or convictions, is entitled to be advised: (1) that he may thereby be adjudged an habitual criminal . . . ; (2) of the precise increase in the term or terms which might be imposed, if any . . . ; and (3) of the effect of any increased term or terms of imprisonment on the accused's eligibility for parole." (*In re Yurko*, at p. 864.)

---

*See footnote, *ante*, page 1410.

[8] "[Defense Counsel]: I spoke briefly with Mr. Sifuentes. I believe that he would like to make admission." The court then informed defendant of the various allegations. Defendant admitted the allegations and counsel joined in the admissions.

 This is a silent-record case. "[S]ilent-record cases are those that show no express advisement or waiver of the *Boykin-Tahl* rights before a defendant's admission of a prior conviction." (*Mosby, supra,* 33 Cal.4th at p. 361.) These cases typically arise when a "jury trial on a substantive offense preceded the defendant['s] admissions of prior convictions. . . . [D]efendants were not told on the record of their right to trial to determine the truth of a prior conviction allegation. Nor did they expressly waive their right to trial. In such cases, in which the defendant was not advised of the right to have a trial on an alleged prior conviction, [the appellate court] cannot infer that in admitting the prior the defendant has knowingly and intelligently waived that right as well as the associated rights to silence and confrontation of witnesses." (*Id.* at p. 362; see *People v. Johnson* (1993) 15 Cal.App.4th 169, 178 [18 Cal.Rptr.2d 650] [absent any advisement of rights, it is "impossible to determine" whether the defendant "not only was aware of these rights, but was also prepared to waive them as a condition to admitting his prior offenses"].)

The Attorney General concedes the trial court did not advise Sifuentes of his rights and the consequences of his plea and he "cannot find evidence in the record that [he] was advised of his right to a jury trial on the priors," but maintains "a combination of four factors show that Sifuentes's admissions were voluntary and intelligent. First, Sifuentes's lawyer indicated before trial his client's intent to admit the priors. . . . Second, the admissions were taken after the verdict. Thus, Sifuentes sat through trial and exercised his rights in the trial. Third, Sifuentes entered his admissions after trial and after discussing it with his lawyer. Fourth, Sifuentes had an extensive criminal history that indicated he was very familiar with the criminal-justice system. These factors indicate that Sifuentes knew about his rights and voluntarily entered the admissions."

Under *Mosby,* we may not infer the admissions were voluntary and intelligent under the totality of the circumstances. *Mosby*'s recognition that a defendant's prior experience with the criminal justice system is relevant to the question whether he knowingly waived constitutional rights comes into play only in incomplete advisement cases. The error compels reversal of the prior conviction findings. (*Mosby, supra,* 33 Cal.4th at p. 362; *People v. Little* (2004) 115 Cal.App.4th 776, 779–780 [9 Cal.Rptr.3d 445].) Retrial of the prior conviction findings is permissible. (*Monge v. California* (1998) 524 U.S. 721 [141 L.Ed.2d 615, 118 S.Ct. 2246]; *People v. Monge* (1997) 16 Cal.4th 826 [66 Cal.Rptr.2d 853, 941 P.2d 1121]; *People v. Fielder* (2004) 114 Cal.App.4th 1221, 1234 [8 Cal.Rptr.3d 247].)

III

DISPOSITION

The judgment as to Lopez is affirmed. Sifuentes's convictions for felon in possession of a firearm (§ 12021, subd. (a)(1)) and for active gang participation (§ 186.22, subd. (a)) are reversed, as is the gang enhancement on his firearm conviction (§ 186.22, subd. (b)(1)). We vacate Sifuentes's sentence and remand for retrial of the prior conviction allegations and resentencing. In all other respects, the judgment is affirmed.

Fybel, J., and Ikola, J., concurred.

A petition for a rehearing was denied June 27, 2011, and the opinion was modified to read as printed above. The petition of appellant Juan Lopez for review by the Supreme Court was denied August 17, 2011, S194392. Kennard, J., was of the opinion that the petition should be granted.