Filed 7/16/14  P. v. Coleman CA2/6
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>            Plaintiff and Respondent,<br><br>v.<br><br>COREY JASON COLEMAN, DARIUS DEJUAN OLIVER,<br><br>            Defendant and Appellant. | 2d Crim. No. B248271<br>(Super. Ct. No. TA121665-O1-02)<br>(Los Angeles County) |

Corey Jason Coleman and Darius DeJuan Oliver appeal from the judgment entered after a jury convicted them of attempted deliberate and premeditated murder (Pen. Code, §§ 664, 187, subd. (a), 189);[1] shooting at an occupied motor vehicle (§ 246); and discharge of a firearm in a school zone (§ 626.9, subd. (d)).  In addition, the jury convicted Coleman of possession of a firearm with a prior violent conviction (§ 29900, subd. (a)(1)).  The jury convicted Oliver of assault with a deadly weapon upon a peace officer (§ 245, subd. (c)); attempting to elude a pursuing peace officer (Veh. Code, § 2800.2, subd. (a)); and possession of a firearm by a felon (§ 29800, subd. (a)(1)).  The jury found true firearm allegations pursuant to sections 12022, subdivision (a)(1); 12022.5, subdivision (a); and 12022.53, subdivisions (c) and (e).  It also found true criminal street gang allegations

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

1

pursuant to section 186.22, subdivision (b). Each appellant admitted allegations of one prior serious felony conviction (§ 667, subd. (a)(1)) and one prior serious or violent felony conviction within the meaning of California's "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).

The trial court sentenced Coleman to prison for 55 years to life with a parole ineligibility period of 30 years. It sentenced Oliver to prison for 39 years to life with a parole ineligibility period of 14 years.[2] Coleman's sentence includes a 20-year enhancement pursuant to section 12022.53, subdivision (c) (personal discharge of firearm). Oliver's sentence includes a 20-year enhancement pursuant to section 12022.53, subdivisions (c) and (e)(1) (discharge of firearm by a principal with a gang enhancement). Both appellants received a consecutive term of five years for the prior serious felony conviction. (§ 667, subd. (a)(1).)

Oliver contends that the evidence is insufficient to support (1) the true findings on the gang allegations and (2) his conviction of possession of a firearm by a felon. Coleman contends that the 20-year enhancement required by section 12022.53, subdivision (c) is facially unconstitutional as cruel and unusual punishment. Coleman also argues that the trial court erroneously failed to strike various sentence enhancements that do not affect the length of his sentence. We modify the judgment to strike these enhancements and affirm the judgment as modified. We direct the trial court to correct clerical errors in the abstracts of judgment.

*Underlying Offenses: People's Evidence*

In January 2012 at about 2:20 p.m., Barry Denman was sitting in the driver's seat of his vehicle, which was parked across the street from Longfellow Elementary School in

---

[2] Coleman is subject to a greater parole ineligibility period than Oliver because Coleman personally discharged a firearm. Pursuant to section 186.22, subdivision (b)(5), Coleman is ineligible for parole for 15 years, doubled to 30 years because of the prior strike. Oliver did not personally discharge a firearm. He is therefore subject to a parole ineligibility period of 7 years pursuant to section 3046, subdivision (a)(1), doubled to 14 years because of the prior strike. (See section 12022.53, subdivision (e)(2) [court cannot impose gang enhancement in addition to section 12022.53 enhancement "unless the person personally used or personally discharged a firearm in the commission of the offense"].)

Compton. He was waiting to pick up his "little brother." School usually let out at 2:25 or 2:30 p.m.

A Lexus pulled alongside the driver's side of Denman's vehicle. Oliver was the driver of the Lexus, and Coleman was the sole passenger. While "hanging out of the sunroof" of the Lexus, Coleman fired a gun several times into the driver's door of Denman's vehicle. Denman was not hit by the gunfire. He "jumped out [of the] passenger door and ran." After the shooting, Denman saw bullet holes "right underneath the bottom portion of the driver side door window."

When the shooting occurred, three school buses were parked in front of the school by the exit gate. A deputy sheriff was driving his marked patrol vehicle "side by side to the school buses" when he heard four gunshots. The deputy and his partner pursued the Lexus and arrested appellants. During the pursuit, a semiautomatic pistol was thrown from the Lexus. At one point, the Lexus went into reverse and struck the front of the patrol vehicle at a speed of at least 20 miles per hour.

At the scene of the arrest, a detective transferred Oliver from one sheriff's vehicle to another. During the transfer, Oliver "shouted to a female . . . black adult[:] . . . 'I'm gone, Mama. They have got me for attempt murder. I'm sorry.' "

*Appellants' Evidence*

Coleman testified as follows: When the shooting occurred, he and Oliver were traveling from Coleman's uncle's home to Coleman's mother's home. Oliver was driving Coleman's Lexus. Coleman was not driving because his license had been suspended. Coleman did not tell Oliver that a gun was underneath the front passenger's seat. Coleman knew that, because he had been convicted of a felony, he was not allowed to possess a firearm.

Coleman saw Denman's vehicle and told Oliver to stop alongside it. Coleman had earlier received information that Denman had been "hitting on" Coleman's wife. After Oliver stopped the Lexus, Coleman told Denman to leave his wife alone. Denman "started being belligerent" and made a motion "[l]ike he was reaching for something." Coleman believed that Denman "was going for a weapon." He "got scared and . . . grabbed the gun

3

and . . . fired."  Coleman aimed the gun at the driver's side door of Denman's vehicle.  He fired four times.  He did not intend to kill Denman.

Oliver testified that Coleman had directed him to stop alongside Denman's vehicle.  Oliver was texting on his cell phone when he heard gunshots.  He did not know that a gun was inside the Lexus.

*Sufficiency of the Evidence: Gang Allegation*

Section 186.22, subdivisions (b)(1) and (b)(4) impose enhanced punishment for persons convicted of a felony committed (1) "for the benefit of, at the direction of, or in association with any criminal street gang," and (2) "with the specific intent to promote, further, or assist in any criminal conduct by gang members."  Oliver contends that the evidence is insufficient to show that his commission of the shooting offenses satisfied these two requirements.

" ' "On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find [the gang allegation true] beyond a reasonable doubt.  [Citations.]" '  [Citation.] . . . '[W]e presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.'  [Citation.]"  (*People v. Wilson* (2008) 44 Cal.4th 758, 806.)

*Gang Evidence*

A gang expert testified as follows: Appellants are members of the Acacia Block Compton Crips, a criminal street gang located in the City of Compton.  The Nutty Block Crips is a rival Compton criminal street gang.  The membership of both gangs is African American.  The gangs are "enemies," and "the relationship between them is violent."  There have been "numerous shootings between Nutty Block and Acacia Block," including shootings from cars.  Longfellow Elementary School is within Nutty Block's territory.

In a hypothetical question, the prosecutor presented the facts of the shooting to the expert.  The expert opined that the shooting "was for the benefit and in association with the Acacia Block Compton Crips gang."  The expert explained that gangs want to be respected, and "the way they attain respect is by being feared."  "[T]hey want rival gangs to fear them

4

and they also want members of the general community to fear them. . . . [T]he more they're feared, the more powerful . . . they are." "The way [gangs] attain respect and fear is through the commission . . . of violent crimes." The creation of fear in the community allows gangs "to further their criminal activity. The more they're feared, they know they can get away with crimes." "[P]eople who live [in the community] are afraid to come forward and report gang related crimes, . . . they're afraid to identify gang members."

The expert continued: "This is a classic gang-related drive-by shooting. Two [Acacia Block gang] members load up in a car and . . . go into a rival gang's neighborhood and commit a shooting. They shoot at a young African American. . . . [T]hey are going to suspect he's a Nutty Block because he's in Nutty Block's area. . . . [¶] . . . A violent crime like this committed in daylight hours with propensity [*sic*] of several witnesses out at a school, brings a ton of fear and respect to that gang. . . . [T]he use of a firearm by gang members . . . creates an atmosphere of fear and intimidation within [the] community. . . . [It] enhances their status within a gang. It . . . exemplifies their willingness to commit violent crimes for the gang in broad daylight." On cross-examination, the expert opined that the Acacia Block gang members in the hypothetical "were on a mission to go find a Nutty Block to kill."

Coleman testified that he and Oliver were members of the Acacia Block Crips and that the gang's main rival was the Nutty Block Crips. Coleman acknowledged that, by driving into Nutty Block territory, he and Oliver were putting themselves at risk of being shot by Nutty Block gang members. Coleman was aware that murders had "been committed by one gang versus the other." He was familiar with Longfellow Elementary School and knew that it let out at about 2:20 p.m.

Oliver testified that the Nutty Block Crips "are a sworn enemy" of the Acacia Block Crips. He has a tattoo on his arm that "means 'Fuck Nutties.' " Despite the violent rivalry between the gangs, Oliver "chose to drive within" Nutty Block's territory.

5

*Substantial Evidence Supports the*

*True Findings on the Gang Allegations*

Based on appellants' and the gang expert's testimony, a reasonable trier of fact could find beyond a reasonable doubt that the shooting was committed for the benefit of the Acacia Block Crips and that Oliver had the "the specific intent to promote, further, or assist in . . . criminal conduct by gang members." (§ 186.22, subd. (b)(1).) It is reasonable to infer that Oliver drove into Nutty Block territory for the purpose of shooting a Nutty Block gang member. It is also reasonable to infer that Oliver drove by Longfellow Elementary School when it was about to let out in the hope of finding a Nutty Block gang member. A shooting at that time and location would receive maximum exposure in the community, resulting in maximum enhancement of the gang's reputation for violence.

*Sufficiency of the Evidence: Oliver's*

*Conviction of Possession of a Firearm by a Felon*

Oliver contends that the evidence is insufficient to support his conviction of possession of a firearm by a felon. "[A] conviction of this offense . . . may be based on a defendant's *constructive* possession of a firearm. [Citation.]" (*People v. White* (2014) 223 Cal.App.4th 512, 524.) Oliver argues that a reasonable trier of fact could not find beyond a reasonable doubt that he had constructive possession of the firearm discharged by Coleman.

"To establish constructive possession, the prosecution must prove a defendant knowingly exercised a right to control the prohibited item, either directly or through another person. [Citations.] Possession may be shared with others. [Citation.] But mere proximity to the weapon, standing alone, is not sufficient evidence of possession. [Citation.]" (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417.)

Oliver was not in "mere proximity" to the firearm discharged by Coleman. He was the driver of the vehicle in what the gang expert characterized as "a classic gang-related drive-by shooting." The gang expert opined that the gang members "were on a mission to go find a Nutty Block to kill." A reasonable trier of fact could find beyond a reasonable doubt that Oliver knowingly exercised a right to control the firearm either directly or through his fellow gang member, Coleman.

6

*People v. Sifuentes*, *supra*, 195 Cal.App.4th 1410, is distinguishable.  There, the appellate court concluded that Sifuentes, a gang member, did not constructively possess a firearm found under a fellow gang member's mattress in a motel room where they were staying.  The court stated, "We agree no substantial evidence shows Sifuentes had the right to control the firearm, even if Sifuentes knew a weapon was in the room."  (*Id*., at p. 1417.)  The court reasoned: "Sifuentes and [and his fellow gang member] simply occupied a motel room with two females.  There was no evidence defendants had used or were about to use the gun offensively or defensively."  (*Id*., at p. 1418.)  Here, in contrast, appellants used the gun in a drive-by shooting.

### Cruel and Unusual Punishment

Pursuant to section 12022.53, subdivision (c), Coleman received a 20-year consecutive term for discharging a firearm during the commission of the attempted deliberate and premeditated murder.  Coleman argues that section 12022.53, subdivision (c) is "unconstitutional on its face as cruel and unusual punishment" because the 20-year enhancement "is grossly disproportionate to the offense"  Coleman notes that, if he had used a knife instead of a gun, the enhancement would have been only one year.  (§ 12022, subd. (b)(1).)  If, on the other hand, he had used a knife and inflicted great bodily injury, the enhancement would have been four years.  (§ 12022.7, subd. (a).)  Coleman also complains that "where the sentence for the underlying offense is indeterminate, precluding judicial discretion, imposing a mandatory enhancement under section 12022.53, subdivision (c), necessarily results in a sentence that is  untailored or arbitrary."  Oliver joins in Coleman's argument.

A similar facial challenge to section 12022.53, subdivision (d) was made in *People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1214-1215.  Subdivision (d) imposes a 25-year-to-life enhancement if the discharge of a firearm caused death or great bodily injury.  For the reasons stated in *Zepeda*, we conclude that section 12022.53, subdivision (c) is not unconstitutional on its face.  The *Zepeda* court rejected the defendant's contention "that section 12022.53 is unconstitutional because it is mandatory in nature."  (*Id*., at p. 1214.)  The court concluded that "the fact that the 25-to-life term is mandatory merely

7

reflects the Legislature's zero-tolerance toward the use and discharge of firearms during the commission of a crime.  It does not render the penalties excessive as a matter of law in every case."  (*Id*., at p. 1214.)  The *Zepeda* court noted that in *People v. Martinez* (1999) 76 Cal.App.4th 489, 497-498, "[t]he court explained that 'the Legislature determined in enacting section 12022.53 that the use of firearms in commission of the designated felonies is such a danger that, "substantially longer prison sentences must be imposed . . . in order to protect our citizens and to deter violent crime."  The ease with which a victim of one of the enumerated felonies could be killed or injured if a firearm is involved clearly supports a legislative distinction treating firearm offenses more harshly than the same crimes committed by other means, in order to deter the use of firearms and save lives.  [Citations.]' [Citation.]"  (*People v. Zepeda*, *supra*, 87 Cal.App.4th at p. 1215.)  The *Zepeda* court continued: "A firearm gives a perpetrator a strong advantage over the victim and effectively deters the victim's escape.  A firearm is particularly lethal to the victim of the underlying crime as well as others in the vicinity; and a firearm allows the perpetrator to effortlessly and instantaneously execute an intent to kill once it is formed.  [Citation.]"  (*Ibid*.)

*Sentencing Enhancements*

I

For the attempted deliberate and premeditated murder conviction, the trial court sentenced Coleman to 15 years to life pursuant to section 186.22, subdivision (b)(5), which provides in relevant part: "[A]ny person who violates this subdivision in the commission of a felony punishable by imprisonment in the state prison for life shall not be paroled until a minimum of 15 calendar years have been served."  Because of the prior strike, the court doubled the minimum 15-year period to 30 years.  (§ 1170.12, subd. (c)(1).)  Coleman contends that the trial court erroneously imposed and stayed a 10-year gang enhancement pursuant to section 186.22, subdivision (b)(1)(C), which provides: "If the felony is a violent felony, as defined in subdivision (c) of section 1192.7, the person shall be punished by an additional term of 10 years."  The People concede the error.  (See *People v. Arauz* (2012) 210 Cal.App.4th 1394, 1404-1405.)

8

## II

For the conviction of shooting at an occupied motor vehicle (§ 246), the trial court sentenced Coleman to 15 years to life pursuant to section 186.22, subdivision (b)(4)(B). The court stayed the sentence pursuant to section 654. The court also stayed an enhancement for "[t]he allegation of personal use of a firearm." The jury found true firearm allegations within the meaning of sections 12022.5, subdivision (a) and 12022, subdivision (a)(1). Coleman contends that the trial court should have struck the firearm enhancements because use of a firearm is an element of the underlying offense. (See *People v. Kramer* (2002) 29 Cal.4th 720, 723, fn. 2, [§12022.5, subd. (a)]; *People v. Sinclair* (2002) 166 Cal.App.4th 848, 855-856 [§ 12022, subd. (a)(1)].)

To Coleman's contention, the People respond: "[A] review of both the minute order of Coleman's sentencing . . . and the abstract of judgment . . . indicates that neither of these firearm enhancements were [*sic*] imposed. Accordingly, . . . there is no sentencing error to correct regarding these firearm enhancements." In his reply brief, Coleman acknowledges that the People's "observation about the minute order and abstract of judgment is correct." But Coleman correctly argues that the trial court's oral pronouncement of judgment prevails over the minutes and abstract of judgment. (See *People v. Mesa* (1975) 14 Cal.3d 466, 471; *People v. Mitchell* (2001) 26 Cal.4th 181, 185 ["An abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize"].)

## III

Coleman contends that, for his conviction of shooting at an occupied motor vehicle (§ 246), the trial court erroneously imposed and stayed a 10-year gang enhancement pursuant to section 186.22, subdivision (b)(1)(C). Instead, it should have struck this enhancement when it imposed and stayed a 15-year to life sentence for the underlying offense pursuant to section 186.22, subdivision (b)(1)(4)(B).

To Coleman's contention, the People respond: "[A] review of both the minute order of Coleman's sentencing . . . and the abstract of judgment . . . indicates that the section 186.22(b)(1)(C) enhancement was imposed only as to [the attempted murder conviction],

9

not [the conviction for shooting at an occupied motor vehicle.] Accordingly, . . . there is no sentencing error . . . to correct."

In his reply brief, Coleman points out that the jury found true an allegation that the offense of shooting at an occupied vehicle was committed for the benefit of a criminal street gang pursuant to section 186.22(b)(1)(C). In its oral pronouncement of judgment, the trial court ordered that "the gang allegation" be stayed pursuant to section 654. Coleman argues: "The court, no doubt, had in mind the jury's true finding . . . of the section 186.22, subdivision (b)(1)(C) allegation." Since the court's oral pronouncement of judgment prevails over the minutes and abstract of judgment, we agree with Coleman that the trial court erroneously imposed and stayed a 10-year gang enhancement pursuant to section 186.22, subdivision (b)(1)(C).

*Clerical Errors in Coleman's Abstracts of Judgment*

" '[T]he certified abstract of the judgment constitutes the commitment. [Citations.] It is thus the order sending the defendant to prison and "the process and authority for carrying the judgment and sentence into effect." [Citations.]' [Citation.]" (*People v. Mitchell, supra,* 26 Cal.4th at p. 185.) "It is, of course, important that courts correct errors and omissions in abstracts of judgment." (***Ibid***.) The Court of Appeal may correct "clerical errors in the abstract of judgment without a request from either party." (***Id***., at p. 187.)

Coleman's abstracts of judgment contain clerical errors that counsel have not brought to this court's attention. In number 6.a. of the abstract of judgment for the indeterminate sentence, the clerk checked a box showing that Coleman had been sentenced to prison for 15 years to life on count 1 (attempted deliberate and premeditated murder). But the court doubled the 15-year parole ineligibility period to 30 years because of the prior strike. (§ 1170.12, subd. (c)(1).) Therefore, the clerk should have checked the box in number 6.c. and specified that Coleman had been sentenced to prison for 30 years to life on count 1. In number 8. of the indeterminate abstract of judgment, the clerk correctly checked a box to show that Coleman had been sentenced pursuant to "PC 667(b)-(i) or PC 1170.12." The clerk should also have checked the "other" box in number 8. and specified that Coleman had been sentenced pursuant to section 186.22, subdivision (b)(5), which provides for the 15-

year parole ineligibility period. Moreover, the indeterminate sentence abstract of judgment shows that Coleman was convicted of "attempted murder" instead of attempted deliberate and premeditated murder. Finally, under "Other orders" in number 11. on page 2 of the indeterminate abstract of judgment, the clerk should have inserted: "Pursuant to Penal Code section 186.22, subdivision (b)(5), and section 1170.12, subdivision (c)(1), Coleman must serve a minimum of 30 calendar years in prison before he is eligible for parole on the conviction of attempted deliberate and premeditated murder (count 1)."

Coleman's abstract of judgment for the determinate sentence shows that on count 5, "shooting at motor vehilce [*sic*]" in violation of section 29900(A)(1), Coleman was sentenced to a concurrent prison term of three years. On count 5 Coleman was convicted of possession of a firearm with a prior violent conviction.

*Clerical Errors in Oliver's Indeterminate Sentence Abstract of Judgment*

In number 6.c. of Oliver's abstract of judgment for the indeterminate sentence, the clerk specified that on count 1 Oliver had been sentenced to prison for 7 years to life. (§ 3046, subd. (a)(1).) But the court doubled the 7-year parole ineligibility period to 14 years because of the prior strike. (§ 1170.12, subd. (c)(1).) Therefore, the clerk should have specified next to the box in number 6.c. that Coleman had been sentenced to prison for 14 years to life on count 1. Oliver's indeterminate abstract of judgment also shows that he was convicted of "attempted murder" on count 1 instead of attempted deliberate and premeditated murder. Under "Other orders" in number 11. on page 2 of the indeterminate abstract of judgment, the clerk should have inserted: "Pursuant to Penal Code section 3046, subdivision (a)(1), and section 1170.12, subdivision (c)(1), Oliver must serve a minimum of 14 calendar years in prison before he is eligible for parole on the conviction of attempted deliberate and premeditated murder (count 1)."

11

*Disposition*

The judgment as to Coleman is modified to strike the 10-year gang enhancements, found true pursuant to section 186.22, subdivision (b)(1)(C), on Coleman's convictions of attempted deliberate and premeditated murder (count 1) and shooting at an occupied motor vehicle (count 2). The judgment is further modified to strike the firearm allegations, found true pursuant to sections 12022.5, subdivision (a) and 12022, subdivision (a)(1), on Coleman's conviction of shooting at an occupied motor vehicle (count 2). In all other respects, the judgments as to both appellants are affirmed.

As to Coleman, the trial court is directed to prepare amended abstracts of judgment and to transmit certified copies to the Department of Corrections and Rehabilitation. In addition to showing the modifications of the judgment, the amended abstracts shall correct the clerical errors discussed above in the section of this opinion entitled "*Clerical Errors in Coleman's Abstracts of Judgment*."

As to Oliver, the trial court is directed to correct the clerical errors discussed above in the section of this opinion entitled "*Clerical Errors in Oliver's Indeterminate Abstract of Judgment*." The court shall transmit a certified copy of Oliver's corrected indeterminate abstract of judgment, along with a certified copy of his determinate abstract of judgment, to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

12

Allen J. Webster, Judge

Superior Court County of Los Angeles

_____

Gloria C. Cohen, under appointment by the Court of Appeal, for Corey J Coleman, Defendant and Appellant.

Rachel Lederman, under appointment by the Court of Appeal, for Darius D. Olier, Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, J. Michael Lehmann, Deputy Attorney General, for Plaintiff and Respondent.