Filed 6/10/21  P. v. Bohmwald CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>LINDSAY MILENA<br>ANDRADE BOHMWALD,<br><br>　　　Defendant and Appellant. | B300413<br><br>(Los Angeles County<br>Super. Ct. No. YA068119-02) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Bruce E. Brodie, Judge.  Affirmed.

Lori A. Quick, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

A jury convicted Lindsay Milena Andrade Bohmwald (also known as Lindsay Bohmwald Andrade) (defendant) of receiving less than $950 of stolen property, a misdemeanor (Pen. Code, § 496, subd. (a)).[1]  On appeal, defendant argues that the trial court erred in not giving a pinpoint jury instruction on third party culpability in light of evidence that the passenger in the car defendant was driving *also* knew about the stolen property.  This argument is without merit for numerous reasons, so we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**I.    Facts**

Around 3:00 a.m. on the morning of May 1, 2007, defendant was driving with her girlfriend as a passenger, and was pulled over for having expired registration tags.  The car was defendant's.  A search of the car revealed (1) various tools to commit auto burglaries (namely, wire cutters, a screwdriver and a variety of sockets) in the driver's door panel and the area between the driver's seat and the center console, (2) a stereo faceplate, keys to a Chevy, and an iPod on the passenger's side floorboard, (3) a stolen disabled person parking placard, a pawn shop receipt, vehicle registrations for two other cars, and mail belonging to people other than defendant or her girlfriend in the glove compartment, and (4) a wallet containing defendant's driver's license and a work ID, her girlfriend's ID and social

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

2

security card, and eight to ten credit cards belonging to Pamela and Martin Griffiths, whose car containing those credit cards had been stolen five days earlier.

At the scene, defendant told the police that all the items in the car belonged to herself or her girlfriend.

When defendant was interviewed the next day by the investigating detective, she stated that (1) she knew the credit cards were stolen, (2) she had been given a backpack containing those cards five days earlier, but defendant did not want to "rat" out the person who had given her the backpack, and (3) she was "to blame for all the stolen property" and that her girlfriend "had nothing to do with . . . any of it."

## II. Procedural Background

### A. *The charges*

On May 3, 2007, the People filed a criminal complaint alleging that defendant and her girlfriend had committed five counts of felony receipt of stolen property (§ 496, subd. (a)), and that defendant had committed two additional counts of misdemeanor receipt of stolen property (*ibid.*). The People further alleged that defendant was on probation for a 2006 conviction for possessing access card account information with the intent to use it fraudulently (§ 484e, subd. (d)).

### B. *Defendant's plea and its subsequent reduction and invalidation*

On May 17, 2007, defendant pled no contest to one of the counts of felony receipt of stolen property. Pursuant to a plea agreement, defendant was sentenced to three years in state prison and the People dismissed the remaining counts.

In April 2016, and pursuant to Proposition 47 (§ 1170.18), the trial court reduced the 2007 felony conviction by plea to a

3

misdemeanor because the property underlying the count of conviction was worth less than $950.

In November 2018, the trial court vacated defendant's now misdemeanor plea entirely on the ground that she had not entered the plea with knowledge of its potential immigration consequences.

### C.     *Reinitiation of prosecution, trial, and sentence*

In January 2019, the trial court deemed the remaining four felony counts of receiving stolen property in the original criminal complaint to be misdemeanors, and the People dismissed all of the counts except count 6, which involves the receipt of the Griffiths' stolen credit cards.

The matter proceeded to a jury trial.

At trial, the detective who had investigated the case shared his view that the girlfriend knew about the stolen items in the car.

Defendant took the stand.  She denied telling the police at the scene that all of items in the car were hers or her girlfriend's, and also denied telling the detective that she knew the credit cards were stolen or that she was solely responsible for the stolen property in the car.  Defendant then explained away all of the incriminating items in the car:  She knew about the burglary tools, but said she used them for do-it-yourself car maintenance; she never saw the stereo faceplate or Chevy keys, but the iPod found in the same location was hers; she did not see the items in the glove compartment; and her driver's license and work ID were *either* not in the wallet with the Griffiths' stolen credit cards *or* were put there by her "very controlling" and "heavily gang-related" girlfriend.  As to how the stolen property came to be in

4

her car, defendant surmised that it must have been placed there by the many people she let use her car.

Rejecting defendant's testimony, the jury returned a guilty verdict.

Because defendant had already served three years in prison for a different count in this case and because she was indigent, the trial court imposed no imprisonment, no probation, and no fines or fees.

### D. *Appeal*

Defendant filed this timely appeal.

## DISCUSSION

It is undisputed that the trial court admitted *evidence* that defendant's girlfriend knowingly possessed the stolen property in defendant's car. What is at issue on appeal is whether the trial court erred in refusing to give a third party culpability *jury instruction* regarding the girlfriend's possible guilt of the crime of receiving stolen property. We independently review the propriety of the trial court's jury instructions. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) Here, we independently conclude that the trial court did not err, and do so for three reasons.

## I. Forfeiture

As a threshold matter, defendant forfeited her instructional claim below for two separate reasons. First, although defendant initially requested a third party culpability instruction, she subsequently withdrew that request. Because a third party culpability instruction is a "pinpoint" instruction that a court need not give unless requested (*People v. Gutierrez* (2009) 45 Cal.4th 789, 824 (*Gutierrez*)), and because defendant's withdrawal negated her earlier request, defendant forfeited her right to raise this issue on appeal. Second, although the record

suggests that defendant proffered two potential third party culpability instructions to the trial court before withdrawing her request, defendant did not include either of them in the record on appeal and has instead offered her view on how the court "should have instructed" the jury. This failure to provide specific language also amounts to a forfeiture. (See *People v. Padilla* (2002) 98 Cal.App.4th 127, 136.)

Defendant responds that any forfeiture is the result of the ineffectiveness of her counsel, such that she is still entitled to relief. We disagree. To establish the ineffectiveness of counsel, a defendant must establish (1) counsel's deficient performance, and (2) that, but for that deficient performance, it is reasonably probable that the outcome of the proceeding would have been different. (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) Counsel was not deficient in withdrawing the proffered third party culpability instructions because, as we explain next, no such instruction was warranted and counsel's decision not to seek an unwarranted instruction is not deficient performance. (See, e.g., *People v. Lucero* (2000) 23 Cal.4th 692, 729-731.)

## II.    Lack of Merit

Because it constitutes a pinpoint instruction (*People v. Hartsch* (2010) 49 Cal.4th 472, 504 (*Hartsch*)), a jury instruction on third party culpability need only be given if it is (1) requested by a party, (2) legally correct, and (3) not duplicative, confusing or argumentative (*id.* at p. 500; *People v. Harris* (2013) 57 Cal.4th 804, 853 (*Harris*)). Even if we overlook defendant's failure to request a third party culpability instruction and assume that a third party culpability instruction is legally correct, the trial court did not err in declining to give such an instruction in this

case because it would have been duplicative, confusing, and, at least as to the instructions suggested on appeal, argumentative.

A third party culpability instruction would have been duplicative. The third party culpability doctrine only applies where evidence that *someone else* committed a crime "'raises a reasonable doubt'" as to whether *defendant* did so. (*Gutierrez*, *supra*, 45 Cal.4th at p. 824.) Because the general reasonable doubt instruction already informs the jury that it cannot convict the defendant if the evidence, as a whole, raises a reasonable doubt as to her guilt, it is well settled that a third party culpability instruction is almost always duplicative and hence unnecessary. (*Id.*, at pp. 824-825; *Harris*, *supra*, 57 Cal.4th at p. 854; *Hartsch*, *supra*, 49 Cal.4th at p. 504; *People v. Johnsen* (2021) 10 Cal.5th 1116, 1158 (*Johnsen*) ["There is no precedent that compels the trial court to instruct the jury specifically on the reasonable doubt standard in the context of third party culpability when the jury has already received a general instruction on the reasonable doubt instruction"].) Defendant argues that a third party culpability instruction would not have been duplicative *in this case* because the court elsewhere gave the CALCRIM No. 373 instruction, which told the jury "not [to] speculate about whether" "another person [who] may have been involved in the" receipt of stolen property crime "has been or will be prosecuted." The CALCRIM No. 373 instruction, defendant argues, "likely drew the jury's attention away from the facts that could raise a reasonable doubt" as to *her* guilt. We disagree. The CALCRIM No. 373 instruction also told the jury that it was not to speculate about the potential guilt of others because its "duty [was] to decide whether the defendant on trial committed the crime charged," which effectively reminded the jury that its job

was to decide whether the evidence proved *the defendant's guilt* beyond a reasonable doubt. As a result, the CALCRIM No. 373 instruction in no way negated the general reasonable doubt instruction or otherwise rendered a third party culpability instruction necessary. (*Johnsen, supra*, 10 Cal.5th at p. 1157 [holding that giving a CALJIC instruction similar to CALCRIM No. 373 did not necessitate or otherwise warrant a third party culpability instruction].)

A third party culpability instruction would have been confusing. Because two people can knowingly possess the same stolen property at the same time (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417 ["[p]ossession may be shared with others"], overruled on other grounds, *People v. Farwell* (2018) 5 Cal.5th 295; CALCRIM No. 1600 ["[t]wo or more people may possess something at the same time"]), the girlfriend's possible guilt of this crime says *nothing* about defendant's possible guilt. In this context, telling the jury that the girlfriend's possible guilt had any bearing on defendant's possible guilt would have been at worst misleading and at best confusing. This is no doubt why the prosecutor, the trial court, and defense counsel all agreed that a third party culpability instruction might confuse the jury.

A third party culpability instruction—at least those suggested by defendant in this appeal—would also have been argumentative. On appeal, defendant suggests that the pinpoint instruction should have instructed the jury on "what use, if any [the jury] could put the evidence that the [stolen credit] cards were in a wallet along with the girlfriend's [ID]" and on "how to evaluate the girlfriend's actions." However, an instruction that "highlight[s] ""specific evidence"" and thereby "invite[s] the jury to draw inferences favorable to one of the parties from [those]

8

specified items of evidence'" is argumentative and, on that basis, must not be given. (*People v. Earp* (1999) 20 Cal.4th 826, 886; *People v. Woods* (2015) 241 Cal.App.4th 461, 488; *People v. Mackey* (2015) 233 Cal.App.4th 32, 112.) Because the instruction defendant proffers on appeal highlights the specific evidence regarding the girlfriend's actions and the proximity of *her* IDs (but not *defendant's* IDs) to the stolen credit cards, it is argumentative and, on that basis, inappropriate.

## III.   No prejudice

For the same reason that a third party culpability instruction in this case would have been duplicative, its absence is necessarily harmless. (*Gutierrez*, *supra*, 45 Cal.4th at p. 825; *People v. Abilez* (2007) 41 Cal.4th 472, 517.)

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST