Filed 4/7/15  P. v. Tshitungi CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,  Plaintiff and Respondent,  v.  MIEL KABEAY TSHITUNGI,  Defendant and Appellant. | D064682  (Super. Ct. No. SCD243103) |

APPEAL from a judgment of the Superior Court of San Diego County, Michael T. Smyth, Judge.  Affirmed.

Doris M. LeRoy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Ryan H. Peeck, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Miel Kabeay Tshitungi of three counts of robbery (Pen. Code,[1] § 211, counts 1, 4, 5), and of being a convicted felon in possession of a firearm (§ 29800, subd. (a)(1), count 2). The jury also found that Tshitungi intentionally and personally discharged a firearm during the commission of the robbery in count 1 (§ 12022.53, subd. (c)), and that he personally used a firearm during the commission of the robberies in counts 4 and 5 (§ 12022.53, subd. (b)). The trial court also found true the allegations that Tshitungi suffered two prior convictions.

The trial court sentenced Tshitungi to prison for a total determinate term of 43 years, consisting of six years for count 1, plus a consecutive determinate term of 20 years for the personal firearm use enhancement, and a 16-month consecutive middle term on count 2.

Tshitungi appeals, contending the record lacks substantial evidence to support his conviction under count 2. He further contends the court erred in concluding it did not have discretion to sentence him concurrently under sections 667, subdivision (c)(6) and 1170.12, subdivision (a)(6).

We conclude substantial evidence supported Tshitungi's conviction on count 2 because he possessed the firearm on at least two occasions after the robbery. We further determine the court properly found Tshitungi could not be sentenced concurrently under the Three Strikes law (§§ 667, subd. (c)(6), 1170.12, subd. (a)(6)) because his offenses did not occur on the same occasion or arise from the same operative facts.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

# I

## FACTUAL BACKGROUND[2]

On August 25, 2012, victim Jamal Jabbaar walked on a dark street towards his car when he heard someone say, "Get down on the ground!" He looked behind him and saw an individual later identified as Tshitungi holding a gun. Jabbaar obeyed, dropped to the ground, and Tshitungi advanced from behind. Once Jabbaar lay on the ground, another man took the victim's keys, wallet and phone. Before Tshitungi and the second assailant ran off with the loot, the second assailant pushed Jabbaar's head into the ground. Jabbaar suffered a bump to his right eye.

On August 30, 2012, Marshall Lindsay was walking home in a residential neighborhood when two men stepped into his path. An individual later identified as Tshitungi swerved to his left and pointed a gun at the victim's head, and another man patted down the victim and took his wallet, change, some pens and keys.

On September 9, 2012, an individual again later identified as Tshitungi charged victim Damon Voong, a San Diego State University student, as Voong walked to the library for a late night study session. Voong first saw Tshitungi as he exited an Audi that had pulled into the parking lot. He noticed Tshitungi wore a hoodie sweatshirt. Tshitungi jogged towards him. Unbeknownst to Voong, Tshitungi had a gun under his sweatshirt. When Voong turned back around, Tshitungi had pulled out the gun and

---

2      We state the facts in the manner most favorable to the judgment. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

3

pointed it at Voong's chest. Voong immediately surrendered, crouched on the ground and put his hands up. Tshitungi took Voong's phone, wallet and backpack.

After the attack, Voong went to the police call box to report the crime. Voong next saw Tshitungi sitting in the passenger side of the Audi, staring at him. Tshitungi got out of the car, pointed the gun at Voong and fired. Voong ducked for cover. Although Voong heard the gun go off, he did not actually see Tshitungi fire the weapon. Voong got a glimpse of the driver of the Audi, whom he described to police as a female because the driver's hair was long and "fluffy."

After the Voong attack, Tshitungi and his codefendant Leon Bell were videotaped by a surveillance camera eating at a restaurant. The video, which was shown to the jury, showed them eating between 11:03 p.m. to 11:29 p.m. The video also depicted Tshitungi wearing red shoes.

A few hours before the robbery of Voong, Tshitungi went to the apartment of Bell and his girlfriend, Dominique Montoya. Tshitungi told Montoya that he had been kicked out of his mother's house and needed a place to stay. Montoya and Bell began to argue about whether Tshitungi could stay with them.

The next day when Montoya awakened, she found Tshitungi sleeping on the couch. Another argument ensued between Montoya and Bell. Bell left, while Tshitungi stayed in the residence. When Bell returned to the residence, Montoya told Tshitungi that he had to wait for Bell outside. As Bell and Tshitungi waited outside pleading for Montoya to let them in, they began knocking on the door, ringing the doorbell and

4

banging on the door of the apartment. Montoya remembered Tshitungi wearing red shoes and a sweatshirt that morning.

At about 8:30 a.m. the same morning, witness Renee Differ was awakened by loud banging noises. Differ looked outside her upstairs window and saw two individuals, whom were later identified as Bell and another man whom she described as wearing red shoes and a sweatshirt. Differ also saw Bell carrying a rifle wrapped in a towel as he walked towards an Audi, while Tshitungi walked alongside him.

At approximately 8:45 a.m. that morning, officers responded to a domestic disturbance call at the apartment complex where Differ and Montoya lived. They found Bell sitting in the driver's seat of an Audi. Officers also found a rifle wrapped in a towel in the backseat as well as a loaded handgun on the driver's side floorboard. After Montoya gave the officers her consent to search the residence, they found a long gun against the wall behind the couch.

During a follow up investigation of the incident, Detective Mark Gain found a receipt in the Audi from the restaurant where Tshitungi and Bell had eaten on the night of Voong's attack. The receipt included a time stamp of 11:05 p.m.

At Tshitungi's trial, crime scene specialist Katie Boyd testified she took a swab of the exterior surface of the handgun used in the robberies, for DNA analysis. DNA analyst Coral Luce testified that she tested that swab and identified Tshitungi as a major contributor of DNA to the exterior surface of the handgun.

5

## II

*SUBSTANTIAL EVIDENCE SUPPORTS TSHITUNGI'S CONVICTION ON COUNT 2*

At the close of the prosecution's case, Tshitungi made a section 1118.1 motion for judgment of acquittal based on insufficient evidence as to count 2. The trial court denied the motion. Tshitungi now contends the court erred in denying his motion. He argues there is insufficient evidence in the record to support his conviction on count 2 for possession of a firearm by a felon because Bell and his girlfriend were the alleged owners of the firearms and he did not have dominion or control over them. We disagree.

In determining whether substantial evidence supports a conviction or a denial of a motion for judgment of acquittal based on lack of evidence, the standard of review is essentially the same: the reviewing court does not determine the facts, but rather examines the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence. (*People v. Hajek* (2014) 58 Cal.4th 1144, 1182-1183.) Substantial evidence is evidence that is reasonable, credible, and of solid value, such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Ibid.*; *People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1416 (*Sifuentes*).)

An ex-felon commits the crime of possession of a firearm the instant he or she "in any way has a firearm within his control." (*People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1410.) A defendant constructively possesses a firearm when he or she knowingly exercises control over or the right to control it, either directly or through others. (See *People v. Pena* (1999) 74 Cal.App.4th 1078, 1083-1084; *People v. Gant* (1968) 264

6

Cal.App.2d 420, 425 [concluding that Gant possessed the firearm jointly with his passenger because the gun was "readily available" to both of them].)

Here, we conclude there is substantial evidence in the record to support the finding in connection with count 2 that Tshitungi possessed the handgun for purposes of section 29800, subdivision (a)(1).  The record shows Tshitungi constructively possessed the handgun after he robbed Voong, inasmuch as the gun was in the getaway car in easy reach of Tshitungi.  (See *People v. Gant*, *supra*, 264 Cal.App.2d at p. 425; *People v. Miranda* (2011) 192 Cal.App.4th 398, 410-411 [concluding defendant possessed a shotgun for purposes of section 29800 (formerly § 12021) because defendant knew the gun was in the car and defendant had access to it, even though others inside the car also had access to the gun].)

Moreover, the record shows Tshitungi also constructively possessed the rifle on the morning of September 10, 2012 when Differ saw Bell holding the rifle wrapped in a towel while Tshitungi walked alongside him.  We conclude this evidence is substantial and supports Tshitungi's conviction on count 2 because Tshitungi knew of the existence of the rifle and could have grabbed it any time.

Despite such evidence, Tshitungi contends there is no evidence that he possessed the weapons at any other time during the robbery, relying heavily on the prosecutor's statement that he allegedly returned the gun to Bell after the Voong robbery because Bell was its rightful owner.  We disagree.

First, even assuming this contention is supported by the record, it actually supports the finding that Tshitungi possessed a gun for purposes of section 29800, subdivision

(a)(1). (See *Sifuentes*, *supra*, 195 Cal.App.4th at pp. 1417-1419.) Second, possession does not turn on ownership, but rather on dominion and control. (See *ibid*.) Because Tshitungi used the gun and therefore possessed it, we reject the contention that merely because Bell and Montoya allegedly owned the gun Tshitungi was precluded from possessing it as a matter of law.

III

*SENTENCING ISSUE ON COUNT 2*

Tshitungi next contends that if we affirm the conviction on count 2 for the robbery on September 9, 2012, we must stay his sentence on count 2. (§ 654, subd. (a).) In addition, he contends that the trial court erred when it found sections 667, subdivision (c)(6) and 1170.12, subdivision (a)(6) mandated consecutive sentences because, as he further contends, his offenses did occur on the "same occasion" or arose from the "same set of operative facts." We disagree.

A. Additional Factual Background

At the time of sentencing, the following colloquy took place between the court and the prosecutor:

> "COURT: Count 2, the 29800(A)(1), possession of a firearm by a felon, [prosecutor], can you refresh my memory, was that charge based on the guns that were found in the car or on his possession of the firearm during the robberies?
>
> "[Prosecutor]: In the car the next day, Your Honor.
>
> "COURT: I did think that was the case. I considered whether or not that arises from the same set of operative facts and whether or not I, therefore, had—if it wasn't, whether I had the discretion to run them concurrent or consecutive. . . . [¶] I don't find—although I will hear

8

from you on this because it's not clear . . . that they are from the same set of operative facts."

After hearing arguments from counsel, the court found it did not have discretion to impose sentence on count 2 concurrently because counts 1 and 2 did not arise out of the same set of operative facts.

### B. Analysis

We conclude that section 667, subdivision (c)(6) and section 1170.12, subdivision (a)(6) did not grant the trial court discretion to sentence concurrently because Tshitungi did not commit the offenses on the "same occasion" as required for application of the narrow discretionary exception to those sections. Because we conclude that his offenses occurred on different occasions, we need not undergo a section 654 analysis.

When the Legislature enacted section 667, it intended to "ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of one or more serious and/or violent felony offenses." (§ 667, subd. (b).) Consequently, the Legislature restricted the court's discretion in sentencing repeat offenders when the defendant's current offenses neither occurred on the "same occasion" nor arose out of "the same set of operative facts." (§ 667, subd. (c)(6); § 1170.12, subd. (a)(6).) "[T]he question of whether sentences should be concurrent or consecutive is separate from the question of whether section 654 prohibits multiple punishment." (*People v. Deloza* (1998) 18 Cal.4th 585, 594.) For purposes of determining whether two offenses occurred on the "same occasion" under section 667, subdivision (c)(6) and section 1170.12, subdivision (a)(6), the trial court should evaluate

9

whether the offenses were committed within close temporal and spacial proximity to one another (*People v. Lawrence* (2000) 24 Cal.4th 219, 228 [finding two offenses occurred on different occasions because they were separated by several city blocks]), whether they occurred simultaneously (*ibid.*), and whether the nature and elements occurred close together in time (*People v. Durant* (1999) 68 Cal.App.4th 1393, 1406 [finding that two offenses occurred on different occasions because one burglary was complete before the second attempted burglary began]).

Here, substantial evidence supports the finding that Tshitungi committed counts 1 and 2 in two separate locations: he committed the robbery of Voong at the San Diego State University campus, and he committed the possession offense at a residence three miles away. Tshitungi also committed his offenses at two separate times: he committed the robbery on the night of September 9, 2012 around 10:00 p.m., and he committed the possession offense on September 10, 2012 sometime between 8:10 a.m. and 8:30 a.m.

Lastly, Tshitungi completed his robbery offense before possessing the firearm. Thus, substantial evidence in the record supports the finding of the court that Tshitungi's offenses occurred on separate occasions because they occurred at different times, at different places, and with several intervening circumstances. As such, we conclude the court had no discretion to sentence Tshitungi concurrently.

10

DISPOSITION

The judgment is affirmed.

                                                               HUFFMAN, Acting P. J.

WE CONCUR:

NARES, J.

O'ROURKE, J.

11