Filed 10/16/15  P. v. King CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C076437 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F08448) |
| v. | |
| MICHAEL KING et al., | |
| Defendants and Appellants. | |

Defendant (driver) Michael King, with codefendant (passenger) Malcolm Hicks, led the police on a high-speed chase after a failed traffic stop.  The chase ended when defendants' car crashed into a truck, a utility pole, and then a tree.  The police apprehended King at the scene and found a loaded handgun in the car.  Hicks fled the scene and broke into an apartment before he was caught.

1

A jury found both defendants guilty of being a felon in possession of a firearm (former Pen. Code, § 12021, subd. (a), now § 29800, Stats. 2010, ch. 711, § 6),[1] but found not true the gang enhancement (§ 186.22, subd. (b)(1)).  (RT 890-891)  The jury found Hicks guilty of felony vandalism (§ 594, subd. (a)) while released from custody (§ 12022.1(a)(1)).  The jury found King guilty of recklessly evading the police (Veh. Code, § 2800.2, subd. (a)) and misdemeanor hit and run (Veh. Code, § 20002, subd. (a)). The trial court found both defendants had a strike prior (§§ 667, subds. (b)-(i) & 1170.12) and Hicks had a prison term prior (§ 667.5, subd. (b)).  The court sentenced Hicks to 11 years in prison, including eight months on a separate charge from another case.  The court sentenced King to seven years four months in prison.

On appeal, both defendants contend the trial court erred in denying their motions to bifurcate the gang enhancement, arguing that although the jury found the enhancement not true, the admission of the gang evidence still prejudiced them.  In addition, King challenges the admission of "extensive gang testimony which was irrelevant, unduly inflammatory, and prejudicial."  He further contends there was insufficient evidence he possessed the firearm, and the court erred in denying his proposed instruction on constructive possession.  Finding any error harmless, we shall affirm.

**FACTS**

*The Crimes*

At about 1:00 p.m. on December 15, 2011, police officers Joe Alioto, Mark Redlich, and Brian Surjan were on patrol in an unmarked black Ford Expedition.  They were wearing mesh raid vests with "police" on the back and a star and a patch on the front.  A white Jaguar caught their attention as it was making erratic lane changes and cutting off cars.  King was driving the Jaguar and Hicks was the passenger.  King was

---

[1] Further undesignated statutory references are to the Penal Code.

wearing a red Cincinnati Reds baseball cap.  Redlich, who was driving the Expedition, initiated a traffic stop by turning on the lights in front of the grille.

The Jaguar slowed, but did not stop.  Redlich made eye contact with King through the mirror.  King and Hicks looked at each other, Hicks looked at the Expedition, and King and Hicks looked at each other again.  The officers saw Hicks making motions and concentrating on something in front of him.  Alioto believed it was something in his lap.  Surjan thought the object was on the floorboard, and saw Hicks make furtive movements while bending towards the floor.  Redlich saw Hicks hold up his hands with something in them.  He interpreted the motion as racking or loading a gun and announced, " 'He's loading a gun.' "  Realizing the Jaguar was not going to stop, Redlich turned on the siren.  There was a slow pursuit and the Jaguar turned into a movie theater parking lot.  The officers got close to the Jaguar and Alioto cracked open his door and aimed his gun at the Jaguar but the Jaguar kept going.

The Jaguar drove out into the street (Arden Way), crossed over the median, and drove the wrong direction.  It pulled into an intersection at a red light and turned onto Howe Avenue, speeding up to 70 miles per hour.  Redlich stopped chasing the Jaguar due to dangerous conditions.  Shortly thereafter, a CHP helicopter advised him the Jaguar had crashed, and Redlich responded to the scene.

Elias Torres was driving down Howe Avenue when a car came at him fast in the opposite direction and hit his truck.  The car then hit a pole and a tree, where it stopped.  King and Hicks got out of the car.  Alioto saw Hicks pull something from his waistline and toss it into the car.

Police found two cell phones and a loaded Glock handgun in the car.  The gun was on the passenger side floorboard.  A red baseball cap was on the asphalt a few feet from the passenger side of the car.  Surjan apprehended King as he tried to jump a fence.

Emily Chao lived in an apartment nearby.  When she returned home that afternoon, she saw her front door was damaged.  She looked through a hole in the door

3

and saw Hicks inside breathing hard. She ran downstairs and contacted the police. Hicks left a sweater with his blood on it on Chao's floor.

*The Gang Evidence*

Jonathon Houston, a gang detective, testified as an expert for the prosecution. He explained that Ridezilla, also known as Underworld Zilla or Zilla, is a subset of the Oak Park Bloods gang. He described Ridezilla as the "all-star team," the most hardcore and violent gang members. One earned entry into Ridezilla by "putting in work," that is, committing crimes such as selling narcotics, robbery, or burglary. There are over 100 validated members of Ridezilla. The primary activities of the gang are robbery, burglary, shooting at inhabited dwellings, assault with a deadly weapon, and criminal weapons violations.

Houston described two crimes committed by Ridezilla members to establish that it qualified as a criminal street gang. The first was an attempted residential robbery by four men in which they broke into a house where a child was alone and demanded money with threats to kill her. The second was a 2010 case that was very similar to this one. A car ran a stop sign and evaded when the police tried to pull it over. The car then stopped and the driver, who was Hicks, and his passenger fled on foot. There was a nine-millimeter gun under the driver's seat. Hicks pled no contest to participation in a criminal street gang. (§ 186.22, subd. (a).)

Houston held the opinion that Hicks was a Ridezilla gang member. Hicks had admitted such three times and had been validated under established criteria four times. Houston described in detail Hicks's gang-related tattoos. On five occasions, Hicks had fled from the police.

Houston opined that King was also a Ridezilla gang member, although he had not been validated at the time of the crimes. His opinion was based on several pictures of King throwing gang signs, his contacts with known gang members, his tattoos, and that he wore a red Cincinnati Reds cap. Houston described several incidents involving King

4

and firearms.  In only one case did King have the gun on his person.  Houston described a 2007 incident where King discarded a firearm and assaulted a police officer with a metal grate (his strike prior).

Houston described the concept of respect in gang culture and the imperative not to get "caught slipping" or with one's guard down.  The ultimate way not to get caught slipping was to be able to answer any disrespect with a gun.  Guns were the tools of the trade in gangs.  It was very common for gang members to share guns.  A gun might be passed to a female to avoid detection by law enforcement.

Houston claimed criminal activity by a gang member benefitted the whole gang.  Given a hypothetical based on the facts of this case, Houston testified the gun possession would benefit the Ridezilla gang.  The two gang members in the car were operating together.  The conduct of racking a gun in response to the police trying to pull the car over, and leading the police on a high-speed pursuit, ending in a collision and fleeing on foot, was not normal conduct and "is definitely for the benefit of the gang."  The possession of a firearm is the biggest sign of power in a gang, where one cannot be seen as a victim.

*The Defense*

The defense focused on defeating the gang enhancement.  King conceded he was guilty of evading and hit and run.  He did contest the gun possession.  Hicks offered no defense to the substantive charges, focusing solely on the gang enhancement.

James Hernandez, a professor in criminal justice at Sacramento State, testified for King.  Given the hypothetical based on the facts of this case, Hernandez testified there was no way to conclude what the intent behind the gun possession was.  The gun could be for the benefit of the gang, but nothing indicated it was specifically for the gang.  There was no evidence that King and Hicks were acting as gang members at the time.  Hernandez was critical of the way Sacramento County handled gang cases; "Sacramento County has -- has kind of run wild with some of it, also."

## DISCUSSION

### I

*Denial of Motion to Bifurcate Gang Enhancement*

Defendants both contend the trial court erred in denying the motion to bifurcate the gang enhancement.[2] They argue that although the jury found the gang allegation not true, the failure to bifurcate it prejudiced defendants because of the considerable evidence presented about gangs. They contend this error requires reversal of the firearm possession count.

A trial court has authority to bifurcate trial on a gang enhancement where the gang evidence is "extraordinarily prejudicial, and of so little relevance to guilt, that it threatens to sway the jury to convict regardless of the defendant's actual guilt." (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049 (*Hernandez*).) Unlike a prior conviction which is often bifurcated, "the criminal street gang enhancement is attached to the charged offense and is, by definition, inextricably intertwined with that offense. So less need for bifurcation generally exists with the gang enhancement than with a prior conviction allegation. [Citation.]" (*Id.* at p. 1048.) "To the extent the evidence supporting the gang enhancement would be admissible at a trial of guilt, any inference of prejudice would be dispelled, and bifurcation would not be necessary. [Citation.]" (*Id.* at pp. 1049-1050.) A trial court may deny bifurcation even where some of the evidence offered to prove the gang enhancement would be inadmissible to prove guilt because other considerations favor joinder. (*Id.* at p. 1050.)

---

**2** Hicks did not move to bifurcate the gang enhancement; instead, he sought to dismiss it by a section 995 motion, which was denied. He did join King's request for a separate jury if the motion to bifurcate was granted. The trial court referred to "defendants' motion" in ruling on it.

The burden is on the defendant seeking bifurcation of the gang enhancement to persuade the court that the factors favoring a single trial " 'are outweighed by a substantial danger of undue prejudice.' [Citation.]" (*Hernandez, supra,* 33 Cal.4th at p. 1050.) "[T]he trial court's discretion to deny bifurcation of a charged gang enhancement is . . . broader than its discretion to admit gang evidence when the gang enhancement is not charged. [Citation.]" (*Ibid.*)

In *Hernandez*, defendants robbed a woman sitting in a car. Hernandez told her, " '[Y]ou don't know who you are dealing with,' and told her she was dealing with 'Hawthorne Little Watts.' " (*Hernandez, supra*, 33 Cal.4th at p. 1045.) Our Supreme Court concluded the trial court's denial of bifurcation was not an abuse of discretion. (*Id.* at p. 1044.) "Much of the gang evidence [] was relevant to the charged offense. Indeed, defendant Hernandez himself injected his gang status into the crime" by identifying himself as a gang member and attempting to use that status in demanding the victim's money. (*Id*. at pp. 1050-1051.) The gang expert's testimony was "relevant to permit the jury to understand Hernandez's statement, to show intent to steal, to show a motive for the crime, to explain how Hernandez's statement could induce fear in the victim, and to explain how the two defendants were working together, all of which were factors relevant to defendants' guilt." (*Id*. at p. 1053.)

In this case, although defendants did not inject their gang status into the crime, gang evidence was still relevant and admissible to prove their guilt of the firearm possession charge. Evidence of their membership in Ridezilla and expert testimony on the importance of firearms to Ridezilla members and that they often share guns tended to establish that defendants had a motive to possess the gun found in the Jaguar and, in turn, that both defendants possessed it. The gang evidence was relevant to show why Ridezilla gang members such as defendants armed themselves and why they would flee from the police. The fact that the jury found the gang enhancements not true shows that the jury was not so influenced by the gang evidence that it simply accepted the People's case as a

7

whole and failed to assess the evidence. Further, defendants did not establish that the additional factors favoring joinder, such as avoidance of increased expenditure of funds and judicial resources, are outweighed by a substantial danger of undue prejudice. That is particularly true as defendants sought not only bifurcation, but also separate juries as to each phase of trial, thereby increasing the inefficiencies of bifurcation.

Because some gang evidence was relevant to the charged offenses, dispelling the inference of prejudice from denial of bifurcation (*Hernandez, supra,* 33 Cal.4th at pp. 1049-1050), and defendants failed to show other gang evidence was so prejudicial as to substantially outweigh the benefits of joinder, the trial court did not abuse its broad discretion in denying the motion to bifurcate the gang enhancement.

II

*Sufficiency of the Evidence King Possessed the Gun*

King contends there was insufficient evidence that he possessed the gun found in the Jaguar. He contends there was insufficient evidence that he controlled the gun. We disagree.

"A defendant possesses a weapon when it is under his dominion and control. [Citation.] A defendant has actual possession when the weapon is in his immediate possession or control. He has constructive possession when the weapon, while not in his actual possession, is nonetheless under his dominion and control, either directly or through others. [Citations.]" (*People v. Pena* (1999) 74 Cal.App.4th 1078, 1083.) Joint possession of contraband is shown where it is "immediately accessible to [multiple persons] in a place under their control. [Citation.]" (*People v. Austin* (1994) 23 Cal.App.4th 1596, 1609, disapproved on another point in *People v. Palmer* (2001) 24 Cal.4th 856, 861, 867.) Possession may be established by circumstantial evidence and any reasonable inferences to be drawn from such evidence. (*People v. Williams* (1971) 5 Cal.3d 211, 215.) Courts have found the inference of dominion and control where the firearm is discovered in a place over which the defendant has general dominion and

8

control, such as his automobile. (E.g., *People v. Taylor* (1984) 151 Cal.App.3d 432, 436 [gun thrown from passenger side of car defendant driving]; *People v. Nieto* (1966) 247 Cal.App.2d 364, 366-368 [guns found under front seat of car defendant driving]; see generally *People v. Rogers* (1971) 5 Cal.3d 129, 135 ["the driver or owner of an automobile has the responsibility to prevent the conveyance of contraband by himself or his passengers"].)

King relies heavily on *People v. Sifuentes* (2011) 195 Cal.App.4th 1410 (*Sifuentes*).[3] In *Sifuentes*, law enforcement officers entered a motel to serve an arrest warrant and found defendant, his companion Lopez, and two women. Sifuentes was lying on top of the bed nearest the door and Lopez was kneeling on the floor on the far side of the second bed. When ordered to raise his hands, Lopez initially would only raise his left hand, keeping his right arm bent at the elbow. After Lopez finally raised his right hand, an officer found a loaded handgun under the mattress next to him. (*Id*. at pp. 1413-1414.) A gang expert testified about Sifuentes's and Lopez's gang affiliations and further testified about the use of a "gang gun" shared freely among gang members in criminal street gangs. (*Id*. at pp. 1414-415.)

The court reversed Sifuentes's conviction for possession of a firearm by a felon, reasoning there was no evidence the gun found in the motel room had been used in the manner described by the gang expert that would make it a communal "gang gun." (*Sifuentes, supra*, 195 Cal.App.4th at p. 1417.) Even if it were a gang gun, "no evidence showed Sifuentes had the right to control the weapon. The gang expert did not testify all gang members always have the right to control a gang gun, whether kept in a safe place or held by another gang member. Rather, the expert testified a gang gun was 'accessible' to gang members 'at most times,' but did not elaborate." (*Ibid*.) The expert testified

---

**3** The Attorney General fails to mention even mention *Sifuentes*, much less distinguish it.

9

certain restrictions applied to access to gang guns, but did not explain these restrictions. (*Id.* at p. 1419.) And even if defendant was aware the gun was in the room, "The possibility Sifuentes might have had the right to exercise control over the gun does not by itself provide a basis to infer he had the right to control it. [Citation.]" (*Ibid.*)

*Sifuentes* is distinguishable from this case. There, the gun was found under a mattress near Lopez in a motel room. Here, the officers found the gun in a place over which King had general dominion and control--the car he was driving. Further, in *Sifuentes* the evidence indicated Lopez (rather than Sifuentes) had exclusive control over the gun. It was near him, and he was actively hiding it. Here, the gun was visible to and available for use by *both* occupants of the car. There was evidence that Hicks first bent to the floorboards to retrieve the gun, suggesting it was on the car's floor, not secreted on Hicks's person. King, who was evading at that point, also witnessed Hicks's maneuvering, as he was in a much better position to see Hicks than were the officers. Further, Hicks retrieved the gun only after King first made eye contact with Officer Redlich, and next looked at Hicks, who confirmed the presence of the vehicle with police inside and then looked again at King. This evidence of the interaction between King and Hicks before the apparent retrieval and loading of the gun buttresses the inference that using the gun was a joint decision of King and Hicks and both possessed it.

Even *without* consideration of the gang evidence, substantial evidence supports the firearm possession conviction. When the evidence of defendants' common gang membership and expert testimony on the importance of firearms to those gang members and that they often share guns--evidence we have found admissible apart from the gang enhancement--is added, the evidence is more than sufficient to sustain King's conviction.

III

*Admission of Gang Evidence*

King next contends the trial court erred in admitting the gang evidence, apparently arguing that it was error to admit *any* gang evidence because the evidence presented was

10

insufficient to establish the gang enhancement (presumably as demonstrated by his acquittal). He distinguishes the cases on which the trial court relied in ruling the gang evidence admissible. Finally, King contends it was error to admit the five prior incidents of his uncharged misconduct.

A. *Background*

The gang enhancement and the gang evidence were the primary issues at trial. The trial court held a hearing pursuant to Evidence Code section 402 on Houston's proposed testimony. King raised four objections to the gang evidence. First, he sought to exclude the gang evidence entirely because Houston was going to testify that every time a gang member has a gun, it is for the benefit of a gang. King argued this testimony turned a specific intent crime into a general intent crime. Next, King argued to exclude evidence he was a Ridezilla gang member as lacking in foundation. He also sought to exclude evidence he was a member of either the Oak Park Bloods gang or the Fourth Avenue Bloods gang as irrelevant because there was an insufficient link with Ridezilla and such evidence was unduly prejudicial. Finally, King wanted to exclude his prior acts involving a firearm as improper character and propensity evidence.

In a lengthy written ruling, the trial court found the gang evidence admissible and probative as to the general intent to possess, motive, knowledge, and possible defenses to the weapon charge. The evidence that gang members shared guns, guns were important to gang culture, and the need to avoid the perception of "slipping" was probative on the issue of the firearm's possession. Defendants' prior police contacts involving both other gang members and firearms were admissible to establish their membership in Ridezilla and to establish that illegal possession of firearms was a primary activity of the gang. The court concluded the prejudicial effect of defendants' prior conduct did not outweigh its probative value.

Although Detective Houston initially testified there had been five police contacts where King was in the presence of firearms, he only described four such incidents. In

11

March 2006, King was contacted after a fight in which a gun was observed; King had gang indicia on his phone. In January 2007, King was driving a car that was stopped. A gun was in plain view in a purse or bag on the passenger floorboard. In May 2007, King was contacted throwing dice with a group of gang members; one was arrested for a gun in his car. In December 2007, King was contacted having lunch with a gang member. King and his companion abruptly ended their meal and left. King went to the kitchen area and threw a gun in a trash can. Both King and the detective following him fell to the ground due to the slippery floor. King beat the detective about the face with a metal grate, knocking out at least one tooth and causing scarring. King pled guilty to that offense.

The trial court instructed the jury with CALCRIM No. 1403 about the limited purpose of evidence of gang activity: "You may consider evidence of gang activity only for the limited purpose of deciding whether: [¶] The defendant acted with the intent, purpose and knowledge that are required to prove the gang related crime or enhancement charged. Or: The defendant had a motive to commit the crimes charged. [¶] You may not consider this evidence for any other purpose. You may not conclude from the evidence that the defendant is a person of bad character or that he has a disposition to commit crime." The court also instructed the jury about the gang expert's testimony: "In his testimony, Detective Houston testified that he considered a variety of law enforcement materials, to include information contained in police reports, photographs and other records. In formulating his opinions, an expert is entitled to rely upon these matters. However, unless instructed otherwise, they are only to be considered by you in evaluating the bases of the expert's opinion and are not to be considered for their truth."

B. *Analysis*

King's argument seems to be that the gang enhancement should not have been *charged* because there was insufficient evidence to support it, and without the gang enhancement, the damaging gang evidence would not have been admitted. Because the jury found the gang allegation *not true*, the more apt contention is that some of the gang

12

evidence, particularly evidence of King's prior contacts and prior assault crime, was so prejudicial that any error in admitting it cannot be found harmless and King's *weapon possession conviction* must be reversed.

For reasons we will explain *post*, we find any error in admitting the gang evidence was harmless under the standard of *People v. Watson* (1956) 46 Cal.2d 818, at page 836, in that it is not reasonably probable that a more favorable result for King would have been achieved had that evidence been excluded. (*People v. Scheer* (1998) 68 Cal.App.4th 1009, 1018-1019; see *People v. Champion* (1995) 9 Cal.4th 879, 923 [applying *Watson* standard to admission of gang evidence], overruled on other grounds as stated in *People v. Combs* (2004) 34 Cal.4th 821, 860.)

Because we reach this conclusion regardless of the propriety of the evidence's admission, we need not determine whether *each challenged piece of evidence* was properly admitted. We do, however, hold that the trial court's admission of evidence of King's prior assault, including the details of his actions and his victim's injuries, was error. The evidence of remaining police contacts involving King, other gang members, and firearms, was more than sufficient to achieve the court's stated purpose of admitting the evidence to establish King's gang membership and that illegal gun possession was a primary activity of Ridezilla. The assault incident added nothing except to show King's propensity toward violence. "Evidence of prior offenses is not admissible simply as character evidence, i.e., to show a propensity to commit crimes in general or a particular class of crimes." (*People v. Felix* (1993) 14 Cal.App.4th 997, 1004-1005.)

We add that after bifurcating trial on both defendants' prior convictions, the court nonetheless admitted the details of both defendants' priors to be related by the detective during presentation of the gang expert evidence. As we have explained, the evidence of King's prior bad acts was admissible only to show gang membership and primary activity, not to show King's *individual propensity* for gun use, gun violence, or any type

13

of violence for that matter. To the extent this evidence crossed that line, its admission was error.

However, the error was harmless because this is not a case like *People v. Albarran* (2007) 149 Cal.App.4th 214, where the gang evidence had little or no probative value and was extremely prejudicial. There, "[c]ertain gang evidence, namely the facts concerning the threat to police officers, the Mexican Mafia evidence and evidence identifying other gang members and their unrelated crimes, had no legitimate purpose in this trial." (*Id.* at p. 230.) Unlike the evidence in *Albarran*, here the majority of the gang evidence was probative of King's gang membership as well as his gun possession and the fact that gun possession was central to the activities of the gang. Further, other than evidence of King's assault upon a detective, the gang evidence was not particularly inflammatory. Finally and significantly, unlike in *Albarron*, here the jury found the gang enhancement allegations not true as to both defendants. This finding demonstrates definitively that the jury did not accept the gang evidence and prior crimes evidence uncritically, and the evidence was not so prejudicial that it swayed the jury to punish defendants for their gang ties or a perceived criminal disposition.

We do not find it reasonably probable that King would have achieved a more favorable result on the gun possession charge had the prior contacts or prior crime gang evidence been excluded. We have found ample evidence to support the charge without consideration of the gang evidence. That conclusion is greatly strengthened by the permissible gang evidence. (*People v. Williams* (2009) 170 Cal.App.4th 587, 612-613.) "Moreover, the court properly instructed the jury that it was not permitted to consider the gang evidence to prove defendant has a bad character or is disposed to commit a crime. It is, of course, presumed the jury understood and followed the court's instruction in the absence of any showing to the contrary. (*People v. Yeoman* (2003) 31 Cal.4th 93, 139.) Here, the jury found not true the gang enhancement allegation attached to count 1. In our

view, this supports our conclusion that the jury fulfilled its duty as instructed." (*Id.* at p. 613.)

IV

*Denial of Special Instruction on Constructive Possession*

King contends the trial court erred in refusing his special instruction on constructive possession. We find no error.

The court instructed with CALCRIM No. 2511 on possession of a firearm by a felon. That instruction reads in part: "The defendants are charged in Count One with unlawfully possessing a firearm in violation of Penal Code section 12021(a)(1). [¶] To prove that a defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant possessed a firearm; [¶] 2. The defendant knew he possessed the firearm; AND 3. The defendant had previously been convicted of a felony. [¶] . . . [¶] Two or more people may possess something at the same time. [¶] A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it, either personally or through another person."

Prior to trial, King requested the court modify the standard CALCRIM No. 2511 instruction to add: "(1) mere proximity to the weapon, standing alone, is not sufficient evidence of possession; (2) the right to access a firearm does not establish the right to control it; and (3) mere knowledge that an item is present does not establish control, rather dominion and control are primary factors."

The trial court was reluctant to depart from the standard instruction and raised the possibility that the phrase "the right to access a firearm" could cause confusion due to its Second Amendment implications. King proposed changing "right to access" to "ability to access." The court subsequently denied the proposed instructions as unnecessary. The

15

denial was without prejudice and the court stated King could renew the request at the conclusion of trial. King did not.[4]

"A trial court must instruct on the law applicable to the facts of the case. [Citation.] In addition, a defendant has a right to an instruction that pinpoints the theory of the defense. [Citation.]" (*People v. Mincey* (1992) 2 Cal.4th 408, 437.) A "trial court may properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation]." (*People v. Moon* (2005) 37 Cal.4th 1, 30.) "A trial court is not required to give pinpoint instructions that merely duplicate other instructions. [Citation.]" (*People v. Panah* (2005) 35 Cal.4th 395, 486.)

The court properly instructed the jury pursuant to CALCRIM No. 2511 that "[a] person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person." As the trial court found, the proposed pinpoint instruction was duplicative. A reasonable juror would understand that possession required control, not just proximity, access, or knowledge. Any doubt on this point is dispelled by the closing argument of King's counsel, which focused the jury's attention on the issue of possession and pinpointed the defense theory that King did not possess the gun because he did not control it. (See *People v. Garceau* (1993) 6 Cal.4th 140, 189, [any theoretical possibility of confusion from standard instructions diminished by parties' closing arguments].) On this record, there was no reasonable likelihood that the jury misunderstood the elements

---

[4] "As a general matter, when a trial court denies a motion without prejudice the matter is forfeited if not renewed. [Citation.]" (*People v. Mills* (2010) 48 Cal.4th 158, 170.) Because King claims denial of the requested instructions denied him the substantial right of due process, the forfeiture rule does not apply. (§ 1259.)

necessary for constructive possession, such that the additional proposed instruction was necessary.

King makes much of the jury's questions during deliberation to show the jury struggled with the instruction on possession. The jury asked if either defendant admitted gun possession and to have the opening and closing statements of defense counsel reread. We construe these questions as the jury's attempt to sort out which crimes had been admitted by which defendant. As noted, King admitted evading and hit and run, and Hicks put on no defense to his substantive charges. The jury also asked for a clarification of CALCRIM No. 2511, whether there was an "and" or an "or" between the first two elements set forth. The court told them "and" was implied. The trial court thus addressed any possible confusion about the instruction. King has failed to show his requested instruction was necessary rather than duplicative. Thus the trial court did not err in denying the proposed instructions.

## DISPOSITION

The judgment is affirmed.

/s/

DUARTE, J.

We concur:

/s/

BLEASE, Acting P.J.

/s/

MAURO, J.