Filed 6/3/22  P. v. Aquino CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G058777 |
| v. | (Super. Ct. No. 14NF4644) |
| ALFREDO MIGUEL AQUINO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gregg L. Prickett, Judge.  Affirmed in part, reversed in part, and remanded for further proceedings.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

Alfredo Miguel Aquino appeals from a judgment after a jury convicted him of second degree murder (count 1), the gang offense (count 2), possession of a firearm by a felon (count 3), and possession of a firearm in a school zone (count 4), and found true gun and street gang enhancements. Aquino argues insufficient evidence supports counts 3 and 4, and the trial court erred by refusing to strike his strike conviction and the minimum parole eligibility enhancement.

While this appeal was pending, Aquino moved for permission to file a supplemental opening brief on the question of whether legislation effective on January 1, 2022,[1] including Assembly Bill No. 333's (AB 333) amendments to the gang statute, applies retroactively and, if so, their effect on this case. We granted the motion, accepted for filing his supplemental opening brief, and invited the Attorney General to file a supplemental respondent's brief, which he did.

We agree insufficient evidence supports counts 3 and 4. Because we conclude, as does the Attorney General, AB 333 applies retroactively, we also conclude insufficient evidence supports count 2 and the firearm and gang enhancements. Our conclusion forestalls the need to answer whether the court erred by imposing the 15-year minimum parole eligibility period. Finally, the court did not abuse its discretion by refusing to strike Aquino's prior strike conviction.

We reverse counts 2, 3, and 4 and the jury's true findings on the firearm and gang enhancements. In all other respects, the judgment is affirmed.

---

[1] Aquino requests we take judicial notice of several legislative bills. "A motion for judicial notice of published legislative history . . . is unnecessary. [Citation.] 'Citation to the material is sufficient. [Citation.] We therefore consider the request for judicial notice as a citation to those materials that are published.' [Citation.]" (*Wittenburg v. Beachwalk Homeowners Assn.* (2013) 217 Cal.App.4th 654, 665, fn. 4.)

FACTS

Aquino drove fellow gang member Ricardo Cruz into rival gang territory. When Aquino stopped the car, Cruz got out and fired a gun several times at men who he thought were rival gang members. One of the bullets struck nine-year-old X.M. who was playing in front of her apartment with her two younger sisters. As her Father began to run outside, X.M. walked through the front door holding her two younger sisters to protect them. X.M.'s father held his unresponsive and bleeding daughter as she passed away.

An information charged Aquino, and Cruz,[2] with the following: murder for a criminal street gang (Pen. Code, §§ 187, subd. (a), 186.22, subd. (b)(4), 190.2, subd. (a)(22), all further statutory references are to the Penal Code) (count 1); gang offense (§ 186.22, subd. (a)) (count 2); possession of a firearm by a felon (§ 29800, subd. (a)(1)) (count 3); and possession of a firearm on school grounds (§ 626.9, subd. (b)) (count 4). The information alleged Aquino vicariously discharged a firearm causing death as to count 1 (§ 12022.53, subds. (d), (e)(1)), and committed the offenses for a criminal street gang as to counts 3 and 4 (§ 186.22, subd. (b)(1)).

The information also alleged Aquino suffered a prior serious and violent felony conviction (§§ 667, subds. (d), (e)(1), 1170.12, subds. (b), (c)(1)), and a prior serious felony conviction (§ 667, subd. (a)(1)). The basis for the prior conviction allegations was a July 2014 conviction for possessing a billy (§ 22210) for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), in October 2013.

*I. Prosecution Evidence*

Surveillance video showed Aquino and Cruz leave an Internet café and get into a white car about 6 p.m. Surveillance video depicted and witnesses saw two Hispanic males in a white four-door car driving in the alley near West Greenacre Avenue

---

[2] Cruz's appeal is the subject of case No. G058494 filed contemporaneously with this appeal. As we explain in that case, the jury concluded Cruz was the shooter.

(Greenacre) with its lights off about one hour later.  Minutes later, witnesses saw a white four-door car driving on Greenacre and stop near several males standing on the sidewalk near a park.

Andrew M. saw the male in the front passenger seat get out of the white car and heard him yell, "Where are you from?"  Melisa M. heard "Where are you from?" and another voice say, "It's mi barrio."  Andrew, David N., and Timothy P. saw the male outside of the car extend his arm, point a handgun at the men, and fire three or four shots in their direction.  The man got back into the car, and the driver sped away.

One of the bullets struck and killed nine-year-old X.M., who was playing in front of her home with her two younger sisters and a friend.[3]

Police officers discovered fresh "Folks" gang graffiti in the Greenacre alley, which was the claimed territory of the "Chicanos Kicking Ass" (CKA) criminal street gang.  CKA and Folks were rival gangs.

About 8 p.m., Aquino and Cruz arrived at Brenda A.'s apartment.  Aquino and Brenda had a child together.  Aquino asked Brenda to call Christian S., who lived on Greenacre, to retrieve his cell phone, which he had lost on the street.  Brenda called Christian, and he told her there were police in front of his house because a little girl had been shot.  After Brenda ended the call, she told Aquino a girl had been shot.  Aquino asked Brenda to give him a ride home because he was afraid the police were looking for him.

Aquino told Brenda that he drove to CKA claimed territory looking to shoot someone from CKA because he had a "beef" with them and wanted to "bang." Aquino previously told Brenda that he was a member of Folks and had been "jumped in" by several guys.  Aquino said he got out of the car and shot at four people who were on

---

[3]     The parties stipulated the forensic pathologist determined X.M. died from a single gunshot wound to her right chest area.

the street by the apartments. Aquino said he yelled out, "Folks," as he was shooting. He added "another person" was firing at one person running towards the baseball fields. Aquino denied he shot the little girl. Later, he told Brenda that he was just shooting at one guy. Brenda drove Cruz home and Aquino to Greenacre to find his cell phone; there were police everywhere. Brenda took Aquino to an Internet café.

The next day, officers arrested Aquino when he was driving the same white car shown in the surveillance footage.

Detective Ryan Killeen testified as an expert on criminal street gangs. After detailing his background, training, and experience, he testified concerning the culture and habits of turf-oriented Hispanic criminal street gangs. Killeen testified concerning Folks, including its history, membership, claimed territory, symbols, and primary activities, which included felony vandalism and possession of a firearm. He also testified at length about the importance of respect to gang members and about the reputational benefit conferred on a gang when a gang member commits a murder or paints graffiti in rival gang territory. He explained gang members commit crimes with other gang members and each person has a role to play. Killeen stated firearms were important in gangs for protection and to commit crimes. He agreed firearms help gang members commit certain crimes. He explained gang members typically tell each other when they are armed because of the following: "One is to let everybody know that there is a firearm amongst the group. One for protection; two, in case they go out and commit a crime, they're aware."

Killeen stated Folks and CKA were rivals, and the incident occurred in CKA claimed territory. He testified about the statutorily required predicate offenses. Based on his investigation and the facts of the case, he opined Aquino and Cruz were active participants in Folks at the time of the shooting. Based on a hypothetical rooted in the case's facts, Killeen opined the shooting was done for the benefit of and in association with a criminal street gang and to promote further criminal gang conduct

5

because "it elevates . . . status." He added the driver benefited the gang and promoted further criminal gang conduct because it "absolutely" increased his status in the gang.

II. *Defense Evidence*

Aquino testified he was 24 years old and he had known Cruz since the fifth grade. Aquino denied being a member of Folks, but admitted he had friends who were Folks gang members, had called out the Folks gang name, and spray painted Folks graffiti.

On the day of the incident, 20-year-old Aquino saw Cruz at the Internet café. Aquino asked Cruz if he wanted to go "cruising"—drive around and listen to music. Cruz agreed. Aquino drove and Cruz was in the front passenger seat. Cruz found a can of spray paint in the car and put it in his waistband. After driving around for about 10 minutes, Cruz told Aquino to take him home. When they got to Cruz's house, Cruz told Aquino to wait for him and he went inside. A few minutes later, Cruz got back into the car and told Aquino he "was packing." Aquino understood this to mean Cruz had a gun. Aquino did not tell Cruz to get out of the car because he wanted to feel accepted and thought there would be serious consequences if he did. He thought they were going tagging and Cruz brought the gun for protection from rival gang members. Aquino knew driving into rival gang territory to spray paint graffiti could be dangerous.

On two occasions, Cruz told Aquino to drive to a particular neighborhood where he got out and spray painted the wall. Aquino stayed in the car looking for police. Aquino was worried about getting caught tagging and because "there [was] a gun in the car."

Cruz told Aquino to drive to CKA claimed gang territory. When they got to the area, Aquino drove through an alley, and Cruz told him to stop the car. Cruz got out, spray painted the wall, and got back in the car. Aquino turned onto Greenacre. Cruz told him to stop and got out of the car. Aquino noticed his seat belt was stuck in the door, and he opened the door. Aquino heard a shot and closed his door. He looked and saw

6

Cruz "shoot the last shot." Aquino heard about three shots. Cruz got into the car, and Aquino drove away. Aquino realized his cell phone fell onto the street and told Cruz they had to go back and get it. Cruz responded, "'Go, go, keep going.'" When he asked Cruz if he had shot anyone, Cruz replied, "'Don't say anything.'"

Aquino denied getting out of his car during the shooting, shouting "Folks," or asking anyone where they were from. Aquino did not see the gun until Cruz fired the third shot. Aquino drove to Brenda's house because her friend lived on Greenacre. When Brenda told him a little girl had been shot, Aquino told her that Cruz must have shot her. Aquino admitted he had told Brenda he had gotten out of the car and fired a gun but said he lied because he wanted to impress her. Aquino denied knowing Cruz intended to kill anyone and he denied shooting X.M.

III. *Verdicts & Sentencing*

The jury acquitted Aquino of first degree murder, convicted him of second degree murder, found not true he personally discharged a firearm, and found true the vicarious firearm and gang allegations. The jury convicted him of the remaining counts and found true the gang enhancement allegations.

At the sentencing hearing, Aquino admitted he suffered a prior strike conviction and serious felony conviction. The trial court denied in part and granted in part Aquino's motion pursuant to section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

The court sentenced Aquino on count 1 to prison for 15 years to life doubled to 30 years to life plus 25 years for the vicarious use of a firearm for a total prison term of 55 years to life. The court imposed a minimum parole eligibility date of 15 years (§ 186.22, subd. (b)(4), (5)). As to count 2, the court struck the strike conviction, imposed the upper term of three years, and stayed the sentence. With respect to count 3, the court struck the strike conviction and imposed the upper term of three years plus four years for the gang enhancement to run concurrently. As to count 4, the

7

court struck the strike conviction, imposed "four plus four for a total of eight years", and stayed the sentence.[4]  In imposing upper terms, the court relied on the fact X.M. was a vulnerable and innocent child playing in front of her home and there were other innocent people nearby at the park.  The court struck the five-year serious felony allegation for purposes of sentencing.  The court did not consider Aquino's age in sentencing, but stated future review by the youthful offender parole board may be possible.

DISCUSSION

*I. Sufficiency of the Evidence*

*A. Counts 3 & 4*

Aquino argues there was insufficient evidence to support his convictions on counts 3 and 4 because there was no evidence he had constructive possession of the firearm.  We agree.

"In evaluating a claim regarding the sufficiency of the evidence, we review the record 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]  'The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.]  'The standard of

---

[4]  The parties agree the court intended to impose the upper term on count 4.  The abstract of judgment indicates the court imposed the upper term.  However, the court sentenced Aquino to "four plus four for a total of eight years."  The upper term for violating section 626.9, subdivision (b), is five years.  (§ 626.9, subd. (f).)  Because we reverse on count 4, and remand for further proceedings consistent with this opinion, we need not discuss this further.

8

review is the same in cases in which the prosecution relies mainly on circumstantial evidence.' [Citations.] 'We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.' [Citation.]" (*People v. Westerfield* (2019) 6 Cal.5th 632, 712-713.)

Deference is not abdication, however, and substantial evidence is not synonymous with any evidence. (*People v. Johnson* (1980) 26 Cal.3d 557, 576-577.) "A reasonable inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork; a finding of fact must be an inference drawn from evidence rather than a mere speculation as to probabilities without evidence. [Citations.]" (*People v. Rekte* (2015) 232 Cal.App.4th 1237, 1247.) We "may not . . . '"go beyond inference and into the realm of speculation in order to find support for a judgment."'" (*People v. Franklin* (2016) 248 Cal.App.4th 938, 947.)

Both counts 3 and 4 required the prosecution to establish with reasonable, credible, and solid evidence that Aquino possessed the firearm (§§ 29800, subd. (a)(1)), 626.9, subd. (b)). "To establish constructive possession, the prosecution must prove a defendant knowingly exercised a right to control the prohibited item, either directly or through another person. ( . . . *People v. Mejia* (1999) 72 Cal.App.4th 1269, 1272 . . . [defendant need not physically have the weapon on his person; constructive possession established where a person knowingly exercised dominion and control over an item].) Possession may be shared with others. [Citation.] But mere proximity to the weapon, standing alone, is not sufficient evidence of possession. [Citation.]" (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417 (*Sifuentes*), overruled on other grounds in *People v. Farwell* (2018) 5 Cal.5th 295, 304, fn. 6.)

9

Contrary to the Attorney General's claim, *Sifuentes, supra,* 195 Cal.App.4th 1410, is instructive. In that case, law enforcement officers found defendant and codefendant, who were both convicted felons, in a motel room with two women. (*Id.* at pp. 1413-1414.) When the officers entered the room, defendant was lying on top of the bed nearest the door and codefendant was kneeling on the floor on the far side of the second bed. (*Ibid.*) Officers later found a loaded handgun under the mattress next to where codefendant had been kneeling. (*Ibid.*) A gang expert testified about defendant's and codefendant's gang affiliations and further testified about the use of a "gang gun" shared freely among gang members in criminal street gangs. (*Id.* at pp. 1414-1415.)

Another panel of this court reversed defendant's conviction for possession of a firearm by a felon, reasoning there was no evidence the gun had been used in the manner described by the gang expert that would make it a communal "gang gun." (*Sifuentes, supra,* 195 Cal.App.4th at p. 1417.) The court assumed for purposes of argument the gun was a gang gun, and stated the following: "[N]o evidence showed [defendant] had the right to control the weapon. The gang expert did not testify all gang members always have the right to control a gang gun, whether kept in a safe place or held by another gang member. Rather, the expert testified a gang gun was 'accessible' to gang members 'at most times,' but did not elaborate." (*Ibid.*) The court stated the expert testified certain restrictions applied to access to gang guns without explaining these restrictions. (*Id.* at p. 1419.) The court concluded that even if defendant was aware the gun was in the room, "[t]he possibility [defendant] might have had the right to exercise control over the gun does not by itself provide a basis to infer he had the right to control it. [Citation.]" (*Ibid.*)

Here, there was insufficient evidence Aquino exercised dominion and control over the gun. There was no evidence Aquino ever had the gun in his possession. Aquino testified he did not see the gun until Cruz fired it. It was not sufficient Aquino

10

knew Cruz had a gun. (*In re I.A.* (2020) 48 Cal.App.5th 767, 779.) Nor was it sufficient Aquino was in close proximity or had an opportunity to access the gun. (*Ibid.*) There was no evidence from which the jury could reasonably conclude Aquino had dominion and control over the gun. Like in *Sifuentes*, the gang expert's testimony here did not provide the missing link. Killeen testified gang members tell each other when they are armed. But he did not testify Cruz's gun was a gang gun or that all gang members had a right to access a gang gun at all times. Simply put, Killeen provided no testimony from which the jury could reasonably conclude gang members share weapons such that all had dominion and control over the weapon. The fact Aquino and Cruz may have been on a "mission" as the Attorney General asserts does not establish Aquino had access to the gun.

Of course there are instances where both the driver and the passenger could exercise dominion and control over a gun in the car. The requisite "inference of dominion and control is easily made when the [item in question] is discovered in a place over which the defendant has general dominion and control: his residence [citation], his automobile [citation], or his personal effects [citation]." (*People v. Jenkins* (1979) 91 Cal.App.3d 579, 584.)

*People v. Nieto* (1966) 247 Cal.App.2d 364, a case upon which the Attorney General relies, is such a case. But in that case, officers found guns in defendant's car, one of which was under the seat in the center of the car, and he was driving. (*Id.* at p. 367.) From this evidence, it was reasonable to conclude defendant had custody and control of the guns underneath the front seat. (*Ibid.*) *Nieto* is distinguishable because there was no evidence the gun was anywhere but in Cruz's possession.

Citing to Aquino's statement he was worried about the police catching them because "there [was] a gun in the car," the Attorney General asserts this evidence establishes that when Cruz got out the car to spray paint, he left the gun in the car and thus Aquino had dominion and control of the gun. Based on Killeen's testimony and the

11

facts of the case, this is pure speculation. Killeen testified gang members use guns in part for protection. When Cruz exited the car and saw what he thought were rival gang members, he brandished the gun. It is implausible to conclude Cruz, who intentionally armed himself before knowingly going into rival gang territory to paint his gang's graffiti, would leave his only means of protection, his gun, in the car. The reasonable inference was he was armed every time he exited the car.

Finally, the Attorney General's reliance on *People v. Miranda* (2011) 192 Cal.App.4th 398, is misplaced. In that case, one of four gang members threw a shotgun from a moving car. (*Id*. at p. 404.) The *Miranda* court noted the item at issue was a shotgun and not a handgun, and held the jury could have reasonably inferred they all knew the shotgun was in the car and had dominion and control of the weapon. (*Id*. at pp. 410-411.) Unlike *Miranda*, here we have a handgun that was not openly displayed or easily accessible to Aquino because it was in Cruz's possession. Thus, insufficient evidence supported Aquino's convictions on counts 3 and 4 because there was no evidence he had constructive possession of the firearm, and we reverse his convictions on these counts.

## B. Section 186.22

Aquino contends AB 333 applies retroactively and thus the section 186.22 offense and enhancements must be reversed and the matter remanded because the jury was not asked to and thus did not make the newly required factual determinations. The Attorney General agrees with Aquino.

The California Street Terrorism Enforcement and Prevention Act (§ 186.20 et seq.) created a substantive offense of active participation "in a criminal street gang" (§ 186.22, subd. (a)), and a sentencing enhancement for a felony committed "for the benefit of, at the direction of, or in association with a criminal street gang" (§ 186.22, subd. (b)(1)). (See *People v. Valencia* (2021) 11 Cal.5th 818, 829.) To establish a gang is a "criminal street gang," the prosecution must prove that the gang has as one of its

12

"primary activities" the commission of one or more of the crimes enumerated in section 186.22, subdivision (e), and that it has engaged in a "'pattern of criminal gang activity'" by committing two or more such predicate offenses.  (§ 186.22, subds. (e), (f).)

AB 333 made substantial revisions to section 186.22 effective January 1, 2022.  We need not detail all those changes here—a couple will suffice.

AB 333 modified the definition of "'criminal street gang'" (§ 186.22, subd. (f)), to mean "an ongoing, organized association or group of three or more persons," "having as one of its primary activities the commission of one or more of the [enumerated] criminal acts," "having a common name or common identifying sign or symbol," and "whose members collectively engage in, or have engaged in, a pattern of criminal gang activity."  It narrows the list of permissible predicate offenses by removing inter alia felony vandalism.  (See § 186.22, subd. (e)(1).)

AB 333 also modified the definition of "'pattern of criminal gang activity'" (§ 186.22, subd. (e)), to require that (1) the last offense used to show a pattern of criminal gang activity "occurred within three years of the prior offense and within three years of the date the current offense is alleged to have been committed"; (2) "the offenses were committed on separate occasions or by two or more members," as opposed to "persons"; and (3) "the offenses commonly benefitted a criminal street gang," and the common benefit was "more than reputational."  Section 12022.53, subdivision (e)(1)(a), requires that a person violated section 186.22, subdivision (b).

The parties agree AB 333 applies retroactively to Aquino.  Courts of Appeal that have considered the issue have concluded AB 333 applies retroactively where, as here, a defendant's conviction was not final before the amendments took effect. (*People v. Sek* (2022) 74 Cal.App.5th 657, 667 (*Sek*); *People v. Lopez* (2021) 73 Cal.App.5th 327, 343-344 (*Lopez*).)  We agree with this well-reasoned authority and conclude AB 333 applies retroactively to Aquino's case because judgment was not final as of January 1, 2022.  (*In re Estrada* (1965) 63 Cal.2d 740, 748 [statutory changes that

13

reduce punishment for a crime apply retroactively to all judgments not yet final on statute's effective date].)

The parties also agree Aquino's conviction for count 2, the gang enhancements as to counts 1, 3, and 4, and the section 12022.53, subdivision (e)(1), must be reversed. Aquino asserts, and the Attorney General agrees, felony vandalism was one of the crimes used to establish Folks's primary activities. AB 333 made that impermissible. Additionally, they also agree the offenses' benefit to Folks was in the Attorney General's words, "purely reputational." That too is now impermissible pursuant to AB 333. (See § 186.22, subd. (g) [benefit must be financial, retaliation, targeting gang rival, or witness intimidation].)

As section 186.22 now requires, there was no evidence Folks was a criminal street gang or the offenses benefitted the gang. Accordingly, the evidence adduced at trial to prove a criminal street gang itself is no longer valid. The existence of a criminal street gang is a prerequisite to proving the gang crime (§ 186.22, subd. (a)), the gang enhancements (§ 186.22, subd. (b)(1)), and the firearm enhancement (§ 12022.53, subd. (e)(1)(A)). (§ 186.22, subd. (f); *People v. Vasquez* (2016) 247 Cal.App.4th 909, 922.)

We reverse Aquino's conviction for count 2 and the jury's true findings on the gang allegation (§ 186.22, subd. (b)(4)), and the vicarious discharge of a firearm allegation (§ 12022.53, subd. (e)), as to count 1, and the gang allegations as to counts 3 and 4 (§ 186.22, subd. (b)(1)).

Although Aquino requests we reverse his gang conviction and enhancements, he does not address the appropriate remedy on remand. The Attorney General asserts the prosecution should be afforded the opportunity to retry the gang offense and enhancements. Aquino chose not to file a supplemental reply brief and thus offers no rebuttal.

14

In *Sek, supra,* 74 Cal.App.5th at page 669, the court faced the identical issue. It stated the following: "Our decision does not bar the prosecution from retrying [defendant] on the gang enhancements upon remand. 'Because we do not reverse based on the insufficiency of the evidence required to prove a violation of the statute as it read at the time of trial, the double jeopardy clause of the Constitution will not bar a retrial. [Citations.] "'Where, as here, evidence is not introduced at trial because the law at that time would have rendered it irrelevant, the remand to prove that element is proper and the reviewing court does not treat the issue as one of sufficiency of the evidence.' [Citation.]" [Citation.]' [Citations.]" We agree with the *Sek* court and conclude the prosecution can retry Aquino on the gang offense and enhancements. We remand the matter for further proceedings consistent with this opinion.

## II. Sentencing

### A. Romero Motion

Aquino asserts the trial court erred by denying his request to strike his prior strike conviction. Not so.

### 1. Background

After the prosecution filed its sentencing brief, Aquino filed a sentencing brief requesting the trial court strike his July 2014 prior serious and violent felony conviction pursuant to section 1385 and *Romero, supra,* 13 Cal.4th 497.

As to the circumstances of the offense, Aquino agreed the offense was serious and grave, but he did not plan to spray paint graffiti in rival gang claimed territory or intend for anyone to die. Aquino admitted he had some culpability but asserted he was not armed and he did not know what Cruz planned to do.

With respect to the circumstances of the prior conviction, Aquino was driving a car and there were two passengers. The evidence demonstrated the front passenger brought a bat into the car. A police officer stopped Aquino, and the passenger fled, leaving the baseball bat. Aquino identified the passenger to police. Against the

15

advice of counsel, Aquino pleaded guilty to possession of a billy for the benefit of a criminal street gang. He did so because he would be immediately released and could work to support his young son and ill father.

Aquino added that his background, character, and prospects supported the trial court exercising its discretion to strike the prior conviction. Aquino was a youthful offender (he was 19 years old when he committed the prior strike and 20 years old when he committed the charged offense). Citing to defense investigator reports, Aquino asserted he had a traumatic childhood and suffered family deaths. He worked multiple jobs to support his son and father. Finally, he showed sincere remorse for the death of X.M. He had been incarcerated for over five years but had "relatively few rule violations."

At the sentencing hearing, the trial court indicated it had read and considered the written submissions. The prosecutor requested the trial court not strike Aquino's prior conviction because it too was a recent gang-related felony involving Cruz and a weapon for which he was on probation when he committed the charged offense.

Aquino's trial counsel argued his "diminished culpability of youth," along with his "minor role" in the current offense, expressions of remorse for his actions, challenging childhood, subsequent growth and maturity while in custody, prospects for the future, and proportionality weighed in favor of the court dismissing the prior strike conviction.

The trial court began by opining that "but/for" Aquino's actions, X.M. would be alive because Aquino drove Cruz into rival gang territory. The court indicated it had read and considered the relevant cases and was cognizant of case law holding that in gang cases the punishment must fit the crime and the perpetrator. The court stated it would exercise its discretion to strike "partially . . . but not absolutely." The court reasoned there were "two strong factors that weigh[ed] in" favor of not striking the prior

16

strike conviction—the closeness in time between the prior conviction and the charged offense, and Aquino knew Cruz was a bad influence on him.

As indicated above, in pronouncing sentence, the court struck Aquino's prior strike convictions to counts 2, 3, and 4 but not on count 1. On count 1, the court sentenced Aquino to 15 years to life doubled to 30 years to life plus 25 years for the vicarious use of a firearm for a total prison term of 55 years to life.

*2. Law*

Section 1385, subdivision (a), states a trial court "may, either on his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." Our Supreme Court stated that "pursuant to . . . section 1385[, subdivision] (a), a trial court may strike an allegation or vacate a finding under the so-called 'Three Strikes' law [citations] that a defendant has previously been convicted of a 'serious' and/or 'violent' felony as defined therein. [Citation.]" (*People v. Williams* (1998) 17 Cal.4th 148, 151-152, fn. omitted (*Williams*).) In deciding whether to exercise its discretion to do so, a court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Id.* at p. 161.)

"[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper. [¶] In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss

17

[citation], or where the court considered impermissible factors in declining to dismiss [citation]. Moreover, 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case. [Citation.] [¶] But '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] [¶] '[W]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]. Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary. Of course, in such an extraordinary case—where the relevant factors described in *Williams, supra,* 17 Cal.4th 148, . . . manifestly support the striking of a prior conviction and no reasonable minds could differ—the failure to strike would constitute an abuse of discretion." (*People v. Carmony* (2004) 33 Cal. 4th 367, 378 (*Carmony*).)

*3. Analysis*

This is not the extraordinary case where all minds would conclude the trial court should have struck Aquino's prior strike conviction. The nature and circumstances of the charged offense were tragic. Gang member Aquino drove an armed gang member into rival gang claimed territory where the gang member shot at rival gang members but killed a nine-year-old girl. At trial, Aquino admitted he knew driving an armed Cruz into rival gang claimed territory to spray paint was dangerous and could result in trouble. From this evidence it was reasonable to conclude that although Aquino was not the shooter, he played a major role in the offense.

18

The nature and circumstances of Aquino's prior conviction although not violent, were troubling. The record before us indicates that about one year before the charged offense, Aquino drove Cruz and another person with a billy in the car. This resulted in Aquino pleading guilty to a gang-related felony so he could work to care for his son and father. But about three months after pleading guilty and while he was on probation, Aquino again decided to associate with an armed Cruz and facilitated his gang-related tagging and murder of an innocent child. Despite having a son to care for, the evidence demonstrated Aquino was attracted to the gang lifestyle, was easily influenced and wanted to impress, and continued to make poor decisions by associating with armed gang members. This evidence did not speak highly of his character or prospects.

Aquino argues the trial court abused its discretion because he was a youthful offender,[5] he was not the shooter, his sentence would have been significant even had the court struck the prior strike conviction, he only had one prior non-violent felony offense, and he had a troubled background. Aquino made the same claims in the trial court. The trial court considered and rejected these reasons for striking the prior strike conviction. We cannot reweigh the applicable factors to reach a contrary result even were we to agree he was outside the spirit of the Three Strikes law. (*Carmony, supra,* 33 Cal.4th at p. 378.)

Aquino acknowledges a trial court may strike prior conviction allegations as to some counts while refusing to strike them as to others. (*People v. Garcia* (1999) 20 Cal.4th 490, 499.) But he asserts the court merely gave "lip service" to its finding Aquino did not fall within the spirit of the Three Strikes law as to some counts by doing

---

[5]     Aquino cites to *Miller v. Alabama* (2012) 567 U.S. 460, where the Supreme Court articulated the youth-related factors a trial court must consider before imposing a life without the possibility of parole sentence. Aquino does not contend his sentence was cruel and unusual punishment.

19

so only to concurrent or stayed sentences.  The court thoroughly considered the *Williams* factors and the possible sentence and determined Aquino's prospects as to count 1 were different from his prospects as to counts 2, 3, and 4.  (*Id*. at p. 500 [prospects differ greatly from one count to another because Three Strikes sentence on one count radically alters prospects to commit future crimes].)  Because the trial court properly "'balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law'" (*Carmony, supra,* 33 Cal.4th at p. 378), it did not abuse its discretion.

*B.  Section 186.22, Subdivision (b)(5)*

In their initial briefing, Aquino asserts, and the Attorney General agrees, the trial court erred by imposing both the 15-year minimum parole eligibility period (§ 186.22, subd. (b)(5)), and the 25-year firearm enhancement (§ 12022.53, subds. (d), (e)(1)), because the jury did not find he personally used a firearm.

In their supplemental briefing, the parties do not discuss whether AB 333 affects the 15-year minimum parole eligibility period.  But AB 333's amendment of section 186.22 affects not only the gang offense and enhancement, but also other statutes that expressly incorporate section 186.22's provisions.  (*Lopez, supra,* 73 Cal.App.5th at p. 346.)

Section 186.22, subdivision (b)(5), states, "Except as provided in paragraph (4), a person who violates this subdivision in the commission of a felony punishable by imprisonment in the state prison for life shall not be paroled until a minimum of 15 calendar years have been served."  As we explain above, insufficient evidence supports the jury's findings pursuant to subdivision (b) of section 186.22.  Because we reverse the jury's true findings on section 186.22, subdivision (b), we strike the 15-year minimum parole eligibility period pursuant to section186.22, subdivision (b)(5).

*C.  Counts 2, 3 & 4*

The trial court imposed upper terms and stayed sentences when imposing sentence on counts 2, 3, and 4.  Because we reverse Aquino's convictions for counts 2, 3,

20

and 4, we need not discuss the effect of Assembly Bill Nos. 124 and 518 and Senate Bill No. 567 on this appeal.

## DISPOSITION

As to count 1, we reverse the jury's true finding on the gang allegation (§ 186.22, subd. (b)(4)), and the vicarious discharge of a firearm allegation (§ 12022.53, subd. (e)), and strike the 15-year minimum parole eligibility period under section 186.22, subdivision (b)(5). We reverse Aquino's convictions for counts 2, 3, and 4. In all other respects, the judgment is affirmed. The matter is remanded for further proceedings consistent with this opinion.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.